4 So.2d 654

### In re OPINION OF THE JUSTICES.

#### No. 61.

Supreme Court of Alabama.

Nov. 22, 1941.

58

Opinion of Justices BROWN, FOS-
TER, and LIVINGSTON

The Governor's inquiry calls for an in-
terpretation and application of the last
paragraph of § 16, Tit. 51 of the Code of
1940, which said section purports to pro-
vide for a "property tax relief fund."

Said section of the Code contemplates
that the Governor shall act promptly on
the 30th of September of each year, when
the comptroller draws the warrants payable
out of said fund in amount sufficient to
reimburse the general fund, the state sol-
diers' relief fund and the public school
fund, reimbursing each of said funds "for
revenues lost by the exemption of home-
steads," the levy to be reduced is the levy
of twenty-five cents on each hundred dol-
lars of assessed value "for the use of the
state and to raise revenue therefor," made
by subsection (c) of § 19, Title 51, Code
of 1940.

The reduction is to be made by proclama-
tion of the Governor under existing law,
Code of 1940, Tit. 51, § 16, in pari materia
with § 19, which makes the levy and fixes
the percentage thereof, upon the ascertain-
ment of a fact—the relation or percentage
the existing surplus bears to total revenue

produced by said levy. This is not the delegation of legislative power by the Legislature to the Governor but is the delegation of power to ascertain a fact upon which the statute operates to reduce the percentage of the levy.

The question arises, can this statute be effectively applied without violating the letter and spirit of §§ 100 and 217 of the Constitution of 1901?

The following pertinent information of fact, matters of judicial knowledge, has been furnished by the State Commissioner of Revenue:

"For the fiscal year which commenced October 1, 1940 and ended September 30, 1941 the ad valorem taxes collected for the general fund, amounting to 25¢ on each $100 of the assessed value of taxable property (subsection (c), Section 19, Chapter 3, Title 51, Code of 1940) amounted to $1,928,483.89. These collections were made on assessments made by the tax assessor during the assessment year commencing October 1, 1939 and ending September 30, 1940 and represent net collections after the allowance of all homestead exemptions, errors, insolvencies, and commissions to assessors and collectors.

"During the current fiscal year (October, 1941 to September 30, 1942) the several tax collectors are collecting ad valorem taxes based on assessments made by the several tax assessors during the assessment year October 1, 1940 to September 30, 1941. These assessments, exclusive of the exempted homesteads and also exclusive of the motor vehicles, the assessments of which have not yet been reported, total $799,934,426. It is estimated that the assessed value of motor vehicles will amount to $32,000,000, making a total valuation which is subject to the levy for general State taxes amounting to $831,934,426. This valuation would produce taxes for the State general fund in the gross amount of $2,079,836.06. If we allow for the commissions of the assessors and collectors and also allow for errors and insolvencies it is estimated that the net collection for the general fund, based on these known assessments, will be approximately $2,050,000.00."

It is apparent from the foregoing that such reduction can not be applied to the levy for the tax year, 1940–1941, for the reason that the taxes under said levy have, in the main, been collected and no provision of law exists for a return of the money so paid to the taxpayers for whose benefit the reduction was intended to operate, and some of the taxes arising from said levy—the ad valorem levy on motor vehicles—has come into the state treasury through payments prior to November 15, 1940. Such payments represent more than one-third of the state levy. To reduce the twenty-five per cent of levy on other property, not including motor vehicles would result in violating, in spirit at least, the provisions of § 217, which require uniformity in the levy. Moreover, a large per cent of the tax from such levy applied to property other than motor vehicles has been paid since the 1st of October, 1941, and can not be refunded because there is no provision of law therefor. To refund without existing law, that is law enacted prior to the attempted reduction of the levy, would violate the letter and spirit of § 100 of the Constitution.

The statute can not be applied to the 1941–1942 levy for the reason that the taxes on motor vehicles have, in the main, been paid prior to November 15, 1941, and for like reason can not be refunded to the taxpayer.

It can not be applied to the levy on other than motor vehicles, because the amount of the tax that will arise therefrom can not be definitely ascertained, so as to make a pro rata reduction as contemplated by the law, and can not be so applied because such application would violate the uniformity provision of the Constitution. Therefore, we are of the opinion that said statute is incomplete and the last clause thereof is unenforceable, now or in future in its present form. It does not contemplate a permanent reduction but a reduction from year to year, depending upon the condition and amount of surplus in the "tax relief fund" on September 30th of each year.