Susan Lee, Alan B., Lois and Andy WEIS-SINGER, minors, suing by and through their parent and next friend, A. B. Weissinger, et al., Plaintiffs,

v.

Charles A. BOSWELL, Commissioner of Revenue for the State of Alabama, and his successors in office, Defendant.

(Formerly Hornbeak et al. v. Rabren).

United States District Court,
M. D. Alabama, N. D.

June 29, 1971.

Barry Hess, Matranga, Hess & Sullivan, Mobile, Ala., and Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiffs.

William J. Baxley, Atty. Gen., and Willard W. Livingston, Asst. Atty. Gen., State of Ala., for defendant.

Before GODBOLD, Circuit Judge, and GROOMS and JOHNSON, District Judges.

PER CURIAM:

This is a class action challenging the federal constitutional validity of Alabama's present ad valorem tax program. The crucial question presented in the case is whether the Due Process and Equal Protection Clauses of the Fourteenth Amendment require the State of Alabama to assess all property within the state at a uniform ratio for ad valorem tax purposes.

Plaintiffs, all of whom are citizens of the United States and the State of Alabama, generally comprise two separate groups. Group I is comprised of corporate taxpayers owning taxable real property in Jefferson County, Alabama; these corporate taxpayers allege that their property is assessed for ad valorem tax purposes at 30 percent of its fair and reasonable market value. Group II consists of minors, suing by and through their parents or next friends, who attend public schools in the State of Alabama. A third group of plaintiffs consisted of adult taxpayers who own taxable property in various counties throughout the state; these adult taxpayers claimed that ad valorem assessments on real property in the counties wherein this property is situated range from 15 percent to 30 percent of the property's fair and reasonable market value.

On June 5, 1969, the then Commissioner of Revenue, Harvey L. Rabren, filed a motion to dismiss, the main thrust of which was to challenge the Court's jurisdiction over the subject matter. This Court, consisting of three judges as required by 28 U.S.C.A. § 2284, in an order issued on October 29, 1969, ruled that the due process claim made by the

adult and corporate plaintiffs was not within the purview of 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343, since it involved only a "property" right capable of pecuniary valuation.[1] Since none of the adult taxpayers was able to allege a pecuniary interest sufficient to satisfy the jurisdictional amount under 28 U.S.C.A. § 1331 and since their individual claims could not be aggregated,[2] this Court granted defendant's motion against all the group of adult plaintiffs. Defendant's motion was denied, however, as to the two corporate defendants, each alleging an amount in controversy in excess of $10,000.

This Court further ruled in its order of October 29, 1969, that the plaintiff-schoolchildren's due process and equal protection claim stated a cause of action under 42 U.S.C.A. § 1983 and its jurisdictional counterpart, 28 U.S.C.A. § 1343, for the reason that plaintiffs' right to use and enjoy the public schools, free from arbitrary and unreasonable conduct (or lack of conduct) on the part of the Government, is clearly a "civil" right within the meaning of Section 1343.[3] Defendant's motion to dismiss was therefore denied as to the Group II plaintiffs.[4]

All plaintiffs sue on their own behalf and on behalf of all others similarly situated. Defendant Boswell is the State Commissioner of Revenue for the State of Alabama.

In their complaint filed with this Court on May 22, 1969, plaintiffs allege that the taxable values of and the assessment rates on real property in the State of Alabama have varied, and continue to vary, significantly from county to county contrary to and in violation of Section 211 of the Alabama Constitution, which requires that the assessments of property in the state be made in exact proportion to the fair and reasonable market value thereof. Plaintiffs further allege that this lack of uniformity in assessments has resulted from the failure of defendant and his predecessors in office to comply with and to discharge their statutory duties imposed by Title 51, Sections 131[5] and 133[6] of the Code of Alabama.

1. See Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968).

2. See Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Brown v. Trousdale, 138 U.S. 389, 11 S.Ct. 308, 34 L.Ed. 987 (1891).

3. See Griffin v. County School Board, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed. 2d 256 (1964); Hobson v. Hansen, 269 F.Supp. 401 (D.D.C.1967); Lee v. Macon County Board of Education, 221 F.Supp. 297, 298 (M.D.Ala.1963).

4. It should also be noted that defendant's contention, as a ground for dismissal, to the effect that plaintiffs' action is barred by the Tax Injunction Act of 1937, 28 U.S.C.A. § 1341, was considered and disposed of by this Court in the October 29, 1969, order. This portion of our order was to the effect that the Alabama courts do not afford plaintiffs a plain, speedy and efficient remedy. In this connection see State ex rel. Foshee v. Butler, 225 Ala. 194, 142 So. 533; State ex rel. Chilton County v. Butler, 225 Ala. 191, 142 So. 531; Morrison v. Morris, 273 Ala. 390, 141 So.2d 169.

5. *"Powers and duties of department.*—It shall be the duty of the department of revenue. * * * (a) To have and exercise general and complete supervision and control of the valuation, equalization and assessment of property * * * and of the enforcement of the tax laws of the state, and of the several county tax assessors, * * * and each and every state and county official, board or commission charged with any duty in the enforcement of tax laws, to the end that all taxable property in the state shall be assessed and taxes shall be imposed and collected thereon in compliance with the law, and that all assessments on property * * * in the state shall be made in exact proportion to the fair and reasonable market value thereof in substantial compliance with the law. (b) To equalize, value and assess * * * any property subject to taxation. * * *" Ala.Code, Title 51, § 131.

6. *"Equalization of valuation.*—It shall be the duty of the department of revenue to examine such of the tax records of the several counties as will enable it to ascertain whether the tax valuation of the various classes of property as made in

The corporate (Group I) taxpayers contend that defendant's failure to perform his duties in accordance with state law, and the resultant disparity and inequality in the assessment and taxation of real property in the state, has deprived and continues to deprive them of property, in the form of ad valorem taxes, without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. The plaintiff-schoolchildren (Group II) contend that since a fixed percentage of the state's ad valorem tax revenue is distributed each year to the various public school districts in the state,[7] defendant's systematic refusal to equalize assessments has deprived these school districts of monies to which they would otherwise be entitled for the education of plaintiffs and all others similarly situated,[8] thus denying plaintiffs due process and equal protection of the law under the Fourteenth Amendment.

Plaintiffs also challenge the constitutionality of Title 51, Section 17(1),[9] of the Code of Alabama. Plaintiffs contend that Section 17(1), in granting state and local tax officials wide discretion in the setting of ad valorem assessment rates, is so vague and indefinite as to violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The constitutionality of Section 17(1) is further attacked by plaintiffs on the ground that Act No. 502, the revenue bill from which Section 17(1) is derived, originated in the Alabama Senate, contrary to the express mandate of Article IV, Section 70, of the Alabama Constitution, which requires that all bills for the raising of revenue originate in the House of Representatives.

Plaintiffs seek a permanent injunction, restraining defendant from complying with or enforcing Section 17(1) and ordering him to take whatever affirmative steps are necessary to equalize the assessment of all like taxable property in the state as required by Title 51, Sections 131 and 133.

Preliminarily, it should be noted that this case does not question the right of a state to establish different classes of property. Nor does it question the right of a state to subject one class of property to one rate of assessment and another class of property to a different

---

the respective counties of the state, is reasonably uniform as between the respective counties, and is in proportion to the fair and reasonable market value of the property assessed. * * * If it shall appear to the said department of revenue that in any one or more counties of this state, * * * the taxable values upon any one or more classes of property are not reasonably uniform with the values fixed upon the same classes of property in other counties, * * * the department of revenue * * * shall have authority to order and direct the board of equalization to readjust and reequalize the same for the current or succeeding tax year, so that each item of property will bear its just proportion of the taxes as provided for herein. * * *" Ala.Code Title 51, § 133.

7. The State of Alabama imposes an ad valorem tax of sixty-five cents on each one hundred dollars of the assessed value of taxable property within the state. Ala.Code Title 51, § 18. Thirty of the sixty-five cents, or nearly fifty percent of the tax, is for the use of the public schools in the state. Ala.Code Title 51, § 19.

8. In the 1967–68 fiscal year, $9,673,144 was deposited in the public school fund out of the state's ad valorem tax revenue. The evidence reflects that if ad valorem assessments were equalized throughout the state at a rate of thirty percent of fair market value, over $6,000,000 more would be available for the public school fund.

9. Ala.Code Title 51, § 17(1) (Supp.1969), provides that:
 *Assessment rate.*—All taxable property within this state shall be assessed for the purpose of taxation not to exceed thirty percent of its fair and reasonable market value.
 Prior to the enactment of Section 17(1) in 1967, all taxable property in the state was assessed at the fixed rate of sixty percent of the property's fair and reasonable market value. Ala.Acts 1935, No. 194, § 6, at 263.

rate.[10] The sole question presented in this case, as will be seen, is whether a state has the right to assess property *in the same class* at different ratios.[11]

Section 211 of the Alabama Constitution provides in pertinent part that:

> All taxes levied on property in this state shall be assessed in exact proportion to the value of such property.
> \* \* \*

Section 217 of the Alabama Constitution provides as follows:

> The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate; provided, this section shall not apply to institutions devoted exclusively to religious, educational, or charitable purposes.

■ These constitutional provisions have been consistently interpreted by the Supreme Court of Alabama as requiring "uniformity and equality among all taxpayers, 'private corporations, associations and individuals alike', both as to ratio and percentage of taxation and also as to rate of taxation."[12] In other words under Sections 211 and 217, all taxable property, by whomsoever owned, in the State of Alabama must be assessed and taxed at uniform ratios for ad valorem purposes. Thus, rather than establishing various classes of taxable property, the State of Alabama has chosen to place all taxable property within the state in a single class for ad valorem tax purposes.

The initial responsibility for assessing the taxable property, other than railroad and utility property,[13] within the state rests with the various county tax assessors. After the county assessor has finished assessing the property and compiling the assessment lists for his particular county, the lists are presented to the county board of equalization, whose duty it is to equalize the assessment of all property within the county.[14]

The State Department of Revenue is charged with the responsibility of equalizing the various county equalization board assessments and its own assessments on railroad and utility property, so that all taxable property in the state will be assessed in accordance with Sections 211 and 217. Sections 131 and 133 of Title 51 [15] of the Code of Alabama

10. See Allied Stores of Ohio v. Bowers, 358 U.S. 522, 527, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959) ; Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954) ; Charleston Federal Sav. & Loan Ass'n v. Alderson, 324 U.S. 182, 191, 65 S.Ct. 624, 89 L.Ed. 857 (1945).

11. Alabama's ad valorem tax structure embraces a three-step procedure. For purposes of assessment, property must be estimated at its fair and reasonable market value (Title 51, Section 46, Code of Alabama). Then it must be assessed for the purpose of taxation at a fixed percentage (60%) of that fair and reasonable market value (Title 51, Sections 17, 131 and 133, Code of Alabama), and, finally, the tax rate is applied to the assessed value. This case concerns disparity in the first two steps. As to the third step, total tax rates are not uniform statewide, but need not be, and there is no claim of disparity.

12. State of Alabama v. Alabama Power Co., 254 Ala. 327, 336, 48 So.2d 445, 453 (1950) ; Hamilton v. Adkins, 250 Ala. 557, 563, 35 So.2d 183 (1948) ; State of Alabama v. Murphy, 45 Ala.App. 637, 644, 235 So.2d 888 (Ct. of Civ.App.1970).

13. In Alabama, all railroad and utility property is assessed for ad valorem tax purposes by the State Department of Revenue. Ala.Code Title 51, § 142.

14. Prior to 1967, each of the various county boards of equalization throughout the state was required to equalize assessments "in such manner as to secure the assessment of property at sixty (60) percent of its fair and reasonable market value." Ala.Code Title 51, § 104. While Section 104 has never been expressly repealed, its force and effect has been completely vitiated by the enactment of Section 17(1). See note 9, supra.

15. The repeated use of the word "classes" in Section 133 in no way conflicts with or detracts from this Court's finding that Alabama has established only one class of property for ad valorem tax purposes. As the Supreme Court of Alabama has explained:

> [This statute] simply contemplate[s] that in assessing property the taxpayer

authorize the Department of Revenue to exercise general and complete supervision over and control of valuation, equalization, and assessment of property "to the end that all taxable property in the state shall be assessed and taxes shall be imposed and collected thereon in compliance with the law, and that all assessments on property * * * shall be made in exact proportion to the fair and reasonable market value thereof."

The defendant, as the chief executive officer of the Department of Revenue,[16] thus has the responsibility for seeing that all taxable property in the state is assessed at uniform assessment ratios for ad valorem tax purposes. The evidence reflects, however, that nonuniformity, rather than uniformity, in ad valorem assessment ratios predominates in the State of Alabama.

In 1969 the State Department of Revenue commenced an assessment-sales ratio study to determine the ad valorem tax assessment ratio of fair and reasonable market value of real property in each county in the state and to determine the statewide median ratio.[17] The results of this study, the reliability [18] of which is not in issue, reveal that the median ratios for the individual counties in the State of Alabama range from lows of 6.7 and 7 percent of fair market value in rural Hale and Washington Counties to highs of 23.1 and 26.8 percent of fair market value in urban Madison and Jefferson Counties. The study further reveals that the median assessment ratio for the state was approximately 16.9 percent of fair market value.

## FOURTEENTH AMENDMENT CLAIM

We now turn to the merits of plaintiffs' federal constitutional claims.

■ It is well established that the states have wide discretion in the laying and collecting of their taxes.[19] The law is equally clear, however, that such discretion cannot be exercised so as to arbitrarily deprive persons of their constitutional rights.[20] So, while the Fourteenth Amendment does not require precise equality or uniformity in taxation,[21] or

---

or tax assessor shall list all the different kinds and types of property owned by the taxpayer. * * * This does not mean that any different ratio of assessment or valuation shall be applied to any one species or class as distinguished from the others, but on the contrary all must be alike, equal or uniform. The reason for enumerating the various species or classes of property is to make sure that the taxpayer is listing for assessment and taxation all his property. * * * [State v. Alabama Power Co., supra, 254 Ala. at 339, 48 So.2d at 455.]

16. Ala.Code, Title 51, § 142.

17. A summary of this study is set out in the appendix.

18. Defendant, while contending that the limited number of sales with respect to commercial, industrial, utility and railroad property limits the value of the study, admits that "the assessment-sales ratio study * * * gives a reasonably accurate representation of the sales-assessment ratio of urban residential property and a less accurate but usable sales-assessment ratio of rural acreage.

The Court finds, moreover, that the inclusion of a greater number of sales of utility and railroad property would, in all likelihood, have increased, rather than reduced, the disparity reflected by the study since the Department of Revenue assesses such property at 30 percent of its fair and reasonable market value.

19. Allied Stores of Ohio v. Bowers, 358 U.S. 522, 526, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); Madden v. Kentucky, 309 U.S. 83, 89, 60 S.Ct. 406, 84 L.Ed. 590 (1940); Randolph v. Simpson, 410 F.2d 1067, 1069 (5th Cir. 1969).

20. Cumberland Coal Co. v. Board of Revision, 284 U.S. 23, 25, 52 S.Ct. 48, 76 L.Ed. 146 (1931); Sunday Lake Iron Co. v. Wakefield Township, 247 U.S. 350, 352–353, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).

21. Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 98 L.Ed. 660 (1954); Morton Salt Co. v. City of South Hutchinson, 159 F.2d 897 (10th Cir. 1947).

prohibit inequality in taxation which results from mere mistake or error in judgment of tax officials,[22] it does "secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."[23] Stated differently, the Fourteenth Amendment protects only against taxation which is palpably arbitrary or grossly unequal in its application to the persons concerned.[24]

■ The Constitution and laws of the State of Alabama provide, for tax purposes, for but one class of property. This means that all property within the state must be assessed and taxed at uniform ratios.[25] The uncontroverted evidence in the case reveals, however, that the corporate plaintiffs' property has been, and continues to be, assessed at a substantially higher percentage and ratio of fair market value than has other property in the state. The evidence further reflects that this lack of uniformity has resulted not from mere mistake or error in judgment, but from the intentional and systematic refusal of defend-

ant and his predecessors in office to perform their duties in accordance with state law.[26] Such inequality of treatment, besides violating Sections 211 and 217 of the Alabama Constitution,[27] denies these plaintiffs their constitutional rights under the Fourteenth Amendment to the United States Constitution.

■ It is true that the Federal Constitution does not prohibit a state from establishing reasonable classes of property and taxing these classes at different rates.[28] But when a state, such as Alabama, has decided, through its duly elected officials, that all property in the state shall be assessed and taxed at a uniform ratio, and has enacted laws and formulated procedures to ensure this end, any substantial disparity or differences in taxation resulting from the failure of state officers to properly administer the state's tax laws will offend the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[29]

In Chicago Union Traction Co. v. State Board of Equalization, 114 F. 557 (C.C.S.D.Ill.1902), aff'd sub nom. Ray-

---

22. Charleston Federal Sav. & Loan Ass'n v. Alderson, 324 U.S. 182, 190, 65 S.Ct. 624, 89 L.Ed. 857 (1945); Cumberland Coal Co. v. Board of Revision, supra, 284 U.S. at 25, 52 S.Ct. 48.

23. Sunday Lake Iron Co. v. Wakefield, supra, 247 U.S. at 352, 38 S.Ct. at 495.

24. See Dane v. Jackson, 256 U.S. 589, 599, 41 S.Ct. 566, 65 L.Ed. 1107 (1921); Mount St. Mary's Cemetery Ass'n v. Mullins, 248 U.S. 501, 506, 39 S.Ct. 173, 63 L.Ed. 383 (1919).

25. See note 12, supra.

26. The findings of two earlier ad valorem assessment studies, one of which was conducted by the Department of Revenue in 1954 and the other by a private consulting firm in 1966 for the Louisville & Nashville Railroad Company, make it clear that ad valorem assessments have not been made in accordance with state law for many years in Alabama. The vast disparity in assessments cannot, therefore,

be attributed to an isolated error or mistake on the part of defendant.

27. For cases in which state tax assessments have been held discriminatory and illegal for being in conflict with state constitutional provisions requiring uniformity and equality in taxation, see Green v. Louisville & Interurban RR Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280 (1917); Cummings v. National Bank, 101 U.S. 153, 25 L.Ed. 903 (1879); Taylor v. Louisville & Nashville RR Co., 88 F. 350 (6th Cir. 1898).

28. See Walters v. City of St. Louis, supra; Randolph v. Simpson, supra.

29. See Wells Fargo & Co. v. Johnson, 214 F. 180 (8th Cir. 1914); aff'd 239 U.S. 234, 36 S.Ct. 62, 60 L.Ed. 243 (1915); Central R. Co. of N. J. v. Martin, 65 F.2d 613 (3rd Cir. 1933); Mobile & O. R. Co. v. Schnipper, 31 F.2d 587 (E.D.Ill. 1929); Wyandotte Chem. Corp. v. City of Wyandotte, 199 F.Supp. 582 (E.D.Mich. 1961), rev'd on other grounds, 321 F.2d 927 (6th Cir. 1963).

mond v. Chicago Union Traction Co., 207 U.S. 20, 28 S.Ct. 7, 52 L.Ed. 78 (1907), the Court, holding that the Illinois State Board of Equalization's failure to properly assess plaintiffs' capital stock deprived them of their rights under the Fourteenth Amendment, emphasized that:

> Taxes are enforced contributions, levied by the State upon the property of individuals, by virtue of its sovereignty, for the support of government, and for the public needs. The money thus taken, until taken, is, * * * property within the meaning of the Constitution of the United States. * * *

> Due process of law, as applied to the cases under consideration, is the authorized procedure whereby the property of the individual can be taken by the State; it includes the initial authority to levy taxes; the purpose to which money thus raised is to be devoted; and the instrumentalities that distribute the burden upon the citizens. Ours is a government of laws, and not of individual officers, or of boards, or of men.

> Any substantial departure, therefore, in the collection of taxes, from the law, either as to the authority for a tax, or its purpose, or the provisions for the just distribution of its burdens, is a departure from due process of law; and the enforced collection of taxes, in the laying and distributing of which there is a substantial departure from law, is the depriving of a citizen of his property without due process of law. [114 F. at 565–566]

In Louisville & Nashville R. Co. v. Public Service Comm'n of Tenn., 249 F. Supp. 894 (M.D.Tenn.1966), aff'd 389 F.2d 247 (6th Cir. 1968), plaintiff argued, and the Court found, that plaintiff's property had been assessed at 55 percent of its fair market value while the other property in the 54 counties through which plaintiff operated was assessed at approximately 20 percent of actual cash value. The Court concluded that:

> [T]he Fourteenth Amendment commands equality of treatment unless the state has established different and reasonable classes of property. In the absence of classification by the state, there is no federal classification which would permit different tax treatment for railroads. * * *

> * * * * * *

> In Tennessee, therefore, there is, for tax purposes, but one class of property, as its laws so emphatically provide. Since the Fourteenth Amendment clearly prohibits unequal treatment within a class, the substantially and systematically higher assessment percentages for railroad and utility property, as opposed to other properties, is a violation of the equal protection clause of the Fourteenth Amendment and entitles the plaintiff to relief. [249 F.Supp. at 899, 902; see Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352–353, 38 S.Ct. 495, 62 L.Ed. 1154 (1918); Railroad and Telephone Cos. v. Board of Equalizers, 85 F. 302, 307 (C.C. M.D.Tenn.1897).]

■ Even if the State of Alabama were permitted by its own Constitution and laws to classify property for tax purposes, it is clear that its present ad valorem tax program still would not comport with the stringent requirements of the Federal Constitution. While distinctions based on geographical areas are not, in and of themselves, violative of the Fourteenth Amendment, Salsburg v. Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954), a state must demonstrate, if it wishes to establish different classes of property based upon different geographical localities—e. g., rural areas as opposed to urban areas—that the classification is neither capricious nor arbitrary but rests upon some reasonable consideration of difference or policy. State Board of Tax Comm'rs of Indiana v. Jackson, 283 U.S. 527,

537, 51 S.Ct. 540, 75 L.Ed. 1248 (1931). Such a showing has not been made in this case.

Defendant has, for example, offered no explanation in an attempt to justify or explain why an urban area like Jefferson County assesses property at a higher percentage (26.8%) of actual cash value than does a rural area like Elmore County (9.7%), while at the same time an area like Dallas County with one municipality of substantial size —Selma—assesses property at a higher percentage (23.1%) of fair market value than does a similar area like Montgomery County (15.5%), which also has only one municipality of a substantial size. Nor has any evidence been submitted to explain why property in Dale County is assessed at 19.1 percent of fair market value, while property in neighboring Coffee and Geneva Counties is assessed at 13.5 and 9.2 percent of actual cash value.

 Being unable to find any legitimate state objective to be served by the vast disparity which presently exists in Alabama's ad valorem tax program, this Court is forced to conclude that the variation in percentages, as between geographical areas of the state, results in the arbitrary classification of taxable property and therefore violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

## CONSTITUTIONALITY OF SECTION 17(1)

Plaintiffs attack the validity of Title 51, Section 17(1) of the Code of Alabama on two separate grounds.

Their first contention is that Section 17(1) was not passed in accordance with state law and is therefore a void enactment. Section 70 of the Alabama Constitution provides that "[a]ll bills for raising revenue shall originate in the

house of representatives." The evidence reflects, and defendant concedes, that the bill from which Section 17(1) is derived originated in the Alabama Senate. The merit of plaintiffs' contention depends, therefore, on whether Section 17(1) is a revenue bill as defined in the first sentence of Section 70 of the Alabama Constitution.

 In Alabama, any bill whose chief purpose is to create revenue or to increase or decrease revenue is one to "raise revenue" and must originate in the House of Representatives. Opinion of the Justices, 238 Ala. 289, 290, 190 So. 824 (1939). There can be no question that a bill which attempts to lower the ad valorem assessment rate from a fixed rate of 60 percent to a maximum rate of 30 percent is one "whose chief purpose is to * * * decrease revenue." Section 17(1), being a revenue bill, should, therefore, have originated in the House of Representatives.[30]

Plaintiffs' second contention is that Section 17(1) lacks the clarity and preciseness required of tax statutes by the Fourteenth Amendment.

 Taxes, or, more specifically, the monies used to pay taxes, are a type of "property" of which a citizen cannot be deprived without due process of law. Due process requires of a statute a reasonable degree of certainty and definiteness—a requirement that applies with special force to a taxing statute. When it leaves the legislature, a statute must be complete in all its terms, and it must be definite and certain enough to enable every person, by reading the law, to know what his rights and obligations are and how the law will operate when put into execution.[31] In addition, a statute which fails to provide clearly ascertainable and well-defined standards to guide the ministerial officers charged by law with its implementation and ad-

---

30. See Opinion of the Justices, 260 Ala. 81, 82, 68 So.2d 840 (1953); Opinion of the Justices, 259 Ala. 514, 66 So.2d 921 (1953).

31. Cf. Connally v. Gen. Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Small Co. v. American Sugar Refining Co., 267 U.S. 233, 239, 45 S.Ct. 295, 69 L.Ed. 589 (1925).

ministration creates an unwarranted and void delegation of legislative power.[32]

■ Section 17(1), literally interpreted, encourages, if not authorizes, the very situation we have previously condemned—unequal taxation among members of the same class—by permitting state and local tax officers to use assessment rates ranging from 0 to 30 percent of fair market value. Vesting such wide discretion in the hands of tax officers, no matter how good their motives, necessarily will result in an arbitrary and discriminatory system of taxation.[33]

■ Even if we were to disregard the "plain meaning" of the statute and instead were to construe Section 17 (1) in *pari materia* with Sections 131 and 133 of the Code of Alabama, so that the Department of Revenue would have the duty to fix and equalize the ratio of assessment throughout the state at between 0 and 30 percent of fair market value, Section 17(1) still would not pass constitutional muster. The power of taxation is a peculiarly legislative function.[34] Delegating to an administrative agency the power to fix the ratio of assessment, without formulating a definite and intelligible standard to guide the agency in making its deter-

mination, constitutes an unconstitutional delegation of legislative power.[35]

Thus, even after cloaking Section 17 (1) with a presumption of validity, United States v. Vuitch, 402 U.S. 62, 91 S. Ct. 1294, 28 L.Ed.2d 601 (1971), we find the statute to be constitutionally infirm.

## RELIEF

■ Since Section 17(1) is unconstitutional in violation of Section 70 of the Alabama Constitution, Title 51, Section 17,[36] which purported to have been repealed by Section 17(1), remains in full force. "The elementary rule of statutory construction is without exception that a void act cannot operate to repeal a valid existing statute, and the law remains in full force and operation as if the repeal had never been attempted."[37]

The Court is aware of the impact of the present decision upon the tax structure of the state and its subdivisions, since the type of discriminatory treatment here involved is deep-seated and of long standing. For these reasons, the Court will give defendant a reasonable period of time, up to one year from the date of this opinion and order, to bring assessments throughout the state into conformity with the mandate of this opinion. It is so ordered.

---

32. See Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); In Re Opinion of the Justices, 242 Ala. 57, 59, 4 So.2d 654 (1941).

33. The literal language of Section 17(1) also appears to violate Section 211 of the Alabama Constitution, in that it does not require all property in the state to be assessed in exact proportion to the value of such property.

34. See Michigan Central Railroad v. Powers, 201 U.S. 245, 293–294, 26 S.Ct. 459, 50 L.Ed. 744 (1906); In Re Opinions of the Justices, 232 Ala. 56, 59–60, 166 So. 706 (1936).

35. See Larabee Flour Mills Co. v. Nee, 12 F.Supp. 395, 403 (W.D.Mo.1935); In Re Opinion of the Justices, 242 Ala. 57, 58, 4 So.2d 654 (1941); James v. United States Fidelity & Guarantee Co., 133 Ky. 299, 117 S.W. 406, 409 (1909).

36. See note 9, supra.

37. Conlon v. Adamski, 64 App.D.C. 274, 77 F.2d 397, 399 (1935); see Frost v. Corporation Comm'n, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929); Dewrell v. Kearley, 250 Ala. 18, 19, 32 So.2d 812 (1947); Randolph v. Builders' & Painters' Supply Co., 106 Ala. 501, 17 So. 721, 725 (1895).

| | (1) Median Ratio | (2) Sampling Ratio (4÷3) | (3) Sample Size | (4) Est. Number of Sales | (5) Usable Samples | (6) Assessed Valuation | (7) Est. Market Value (6÷1) |
|---|---|---|---|---|---|---|---|
| Autauga· | 20.8 | 5.2 | 237 | 1,228 | 158 | 15,453,690 | 74,296,586 |
| Baldwin | 12.8 | 27.8 | 327 | 9,085 | 96 | 47,103,960 | 367,999,687 |
| Barbour | 12.1 | 3.7 | 219 | 808 | 115 | 10,339,800 | 85,452,892 |
| Clayton | Not separated for computation | | | | | | |
| Eufaula | Not separated for computation | | | | | | |
| Bibb | 12.7 | 2.8 | 165 | 459 | 95 | 4,909,540 | 38,657,795 |
| Blount | 11.3 | 6.0 | 221 | 1,331 | 112 | 15,005,970 | 132,796,194 |
| Bullock | 13.3 | 3.3 | 132 | 439 | 86 | 5,609,570 | 42,177,218 |
| Butler | 12.2 | 4.4 | 161 | 713 | 101 | 11,996,510 | 98,332,049 |
| Calhoun | 19.8 | 8.8 | 453 | 3,975 | 191 | 54,469,475 | 275,098,358 |
| Chambers | 9.8 | 3.5 | 302 | 1,048 | 213 | 15,895,180 | 162,195,714 |
| Cherokee | 10.0 | 3.2 | 305 | 985 | 185 | 6,572,980 | 65,729,800 |
| Chilton | 8.8 | 4.6 | 290 | 1,330 | 167 | 12,137,370 | 137,924,659 |
| Choctaw | 7.3 | 2.6 | 213 | 563 | 69 | 9,146,820 | 125,298,904 |
| Clarke | 15.3 | 3.5 | 116 | 406 | 42 | 14,500,260 | 94,772,941 |
| Clay | 8.0 | 3.6 | 179 | 643 | 111 | 4,669,275 | 58,365,937 |
| Cleburne | 7.8 | 4.9 | 126 | 620 | 34 | 4,194,510 | 53,775,769 |
| Coffee | 13.9 | 1.9 | 779 | 1,444 | 391 | 18,724,360 | 134,707,625 |
| Elba | 12.8 | 2.0 | 225 | 452 | 118 | | |
| Enterprise | 14.9 | 1.8 | 554 | 992 | 273 | | |
| Colbert | 10 5 | 4.9 | 458 | 2,050 | 254 | 38,794,695 | 369,473,285 |
| Conecuh | 8.4 | 4.0 | 185 | 741 | 71 | 8,031,600 | 95,614,285 |
| Coosa | 8.3 | 3.3 | 148 | 483 | 47 | 4,611,330 | 55,558,192 |
| Covington | 10.0 | 5.8 | 257 | 1,500 | 192 | 20,183,100 | 201,831,000 |
| Crenshaw | 11.3 | 2.5 | 194 | 490 | 116 | 7,106,280 | 62,887,433 |
| Cullman | 11.9 | 5.0 | 443 | 2,197 | 232 | 27,801,665 | 233,627,436 |
| Dale | 24.6 | 4.5 | 382 | 1,707 | 186 | 18,265,570 | 74,250,285 |
| Dallas | 25.4 | 3.4 | 328 | 1,104 | 216 | 36,513,270 | 143,753,031 |
| DeKalb | 8.1 | 3.7 | 511 | 1,900 | 295 | 15,988,180 | 197,384,938 |
| Elmore | 11.1 | 3.6 | 317 | 1,150 | 162 | 14,580,770 | 131,358,288 |
| Escambia | 10.8 | 2.2 | 459 | 1,022 | 165 | 17,068,576 | 158,042,370 |
| Etowah | 15.0 | 6.4 | 561 | 3,574 | 341 | 79,762,400 | 531,749,333 |
| Fayette | 12.0 | 1.5 | 290 | 425 | 200 | 7,717,630 | 64,313,583 |
| Franklin | 16.7 | 4 0 | 290 | 1,150 | 121 | 14,004,945 | 83,861,946 |
| Geneva | 9.4 | 2.9 | 332 | 957 | 98 | 9,717,060 | 103,372,978 |
| Greene | 10.2 | 2.1 | 141 | 294 | 94⁻ | 5,870,290 | 57,551,862 |
| Hale | 6.7 | 1.9 | 200 | 380 | 98 | 5,552,240 | 82,869,253 |
| Henry | 14.9 | 3.6 | 170 | 620 | 109 | 7,033,520 | 47,204,832 |
| Houston | 9.9 | 7.4 | 301 | 2,234 | 208 | 23,311,180 | 235,466,464 |
| Jackson | 12.6 | 4.3 | 375 | 1,605 | 213 | 17,749,460 | 140,868,730 |
| Jefferson | 1 26.8 | 10.3 | 1,362 | 14,000 | 853 | 903,648,786 | 3,371,823,828 |
| Birmingham | 1 26.9 | 12.0 | 919 | 11,000 | 574 | | |
| Bessemer | ' 26.7 | 6.8 | 443 | 3,000 | 273 | | |
| Lamar | 13.8 | 2.2 | 294 | 650 | 194 | 7,137,140 | 51,718,405 |
| Lauderdale | 12.5 | 9.0 | 343 | 3,100 | 244 | 43,068,525 | 344,548,200 |
| Lawrence | 7.5 | 2.2 | 337 | 725 | 185 | 11,939,410 | 159,192,133 |
| Lee | 15.7 | 3.7 | 487 | 1,813 | 200 | 34,572,553 | 220,207,344 |
| Limestone | ·10.0 | 3.9 | 420 | 1,650 | 220 | 18,276,570 | 182,765,700 |
| Lowndes | 11.2 | 1.8 | 131 | 240 | 86 | 6,753,837 | 60,302,116 |
| Macon | 11.4 | 2.4 | 280 | 679 | 141 | 9,742,040 | 85,456,491 |
| Madison | 23.1 | 9.8 | 511 | 5,000 | 292 | 191,506,960. | 829,034,458 |
| Marengo | 12.0 | 3.5 | 195 | 678 | 137 | 17,374,115 | 144,784,291 |
| Marion | 10.6 | 2.3 | 453 | 1,050 | 190 | 9,856,709 | 92,987,820 |
| Marshall | 13.5 | 7.8 | 396 | 3,100 | 235 | 34,294,870 | 254,035,777 |
| Mobile | 18.9 | 12.8 | 947 | 12,144 | 526 | 270,005,330 | 1,428,599,629 |
| Monroe | 17.4 | 5.9 | 126 | 749 | 68 | 13,690,180 | 79,828,620 |
| Montgomery | 17.7 | 8.6 | 555 | 4,800 | 210 | 129,310,620 | 730,568,474 |
| Morgan | 16.0 | 10.2 | 327 | 3,331 | 185 | 63,052,150 | 394,075,937 |
| Perry | 9 3 | 3.0 | 126 | 372 | 111 | 8,537,600 | 91,802,150 |
| Pickens | 9.4 | 2.2 | 393 | 858 | 160 | 9,220,290 | 98,088,191 |
| Pike | 20.3 | 2.5 | 269 | 683 | 163 | 14,921,510 | 73,504,975 |
| Randolph | 7.5 | 2.9 | 208 | 600 | 126 | 5,855,100 | 78,068,000 |
| Russell | 15.5 | 3.9 | 377 | 1,468 | 206 | 21,003,880 | 135,508,903 |
| Shelby | 8.3 | 4.2 | 359 | 1,495 | 138 | 17,936,720 | 216,105,060 |
| St. Clair | 9.9 | 2.8 | 563 | 1,550 | 303 | 12,976,150 | 131,072,222 |
| Ashville | 10.1 | | | | 180 | | |
| Pell City | 9.0 | | | | 123 | | |
| Sumter | 14.3 | 3.6 | 161 | 574 | 94 | 11,722,400 | 81,974,825 |
| Talladega | 9.7 | 3.9 | 657 | 2,592 | 357 | 26,932,142 | 277,650,948 |
| Tallapoosa | 8.2 | 3.8 | 258 | 973 | 133 | 21,397,760 | 260,948,292 |
| Tuscaloosa | 17.0 | 6.0 | 654 | 3,907 | 331 | 80,328,750 | 472,522,058 |
| Walker | 10.0 | 4.2 | 530 | 2,200 | 278 | 19,292,390 | 192,923,900 |
| Washington | 7.0 | 2.5 | 240 | 592 | 56 | 11,274,080 | 161,058,285 |
| Wilcox | 13.3 | 2.9 | 175 | 505 | 47 | 6,544,260 | 49,204,962 |
| Winston | 11.1 | 2.1 | 357 | 750 | 164 | 7,565,630 | 68,158,828 |
| TOTAL | | 5.4 | 23,058 | 123,488 | 12,217 | 2,670,331,448 | 15,837,142,474 |
| Statewide Average Medians | 16.9 | | | | | | |

[A4456]

DEPARTMENT OF REVENUE
AD VALOREM TAX DIVISION
SUMMARY OF 1969 REAL PROPERTY RATIO STUDY

N D I X

| (8) Rural Median | (9) Urban Median | (10) Rural Assessed Valuation | (11) Urban Assessed Valuation | (12) Est. Market Value Rural (10÷8) | (13) Est. Market Value Urban (11÷9) | (14) Est. Total Market Value (12+13) | (15) Weighted Average Median (6+14) |
|---|---|---|---|---|---|---|---|
| 7.3 | 21.0 | 4,790,850 | 10,662,840 | 65,628,082 | 50,775,428 | 116,403,510 | 13.3 |
| 12.1 | 13.4 | 25,174,420 | 21,929,540 | 208,053,057 | 163,653,283 | 371,706,340 | 12.7 |
| 9.6 | 14.5 | 4,220,570 | 6,119,230 | 43,964,270 | 42,201,586 | 86,165,856 | 12.0 |
| | | | | | | | |
| 12.4 | 13.2 | 2,930,210 | 1,979,330 | 23,630,725 | 14,994,924 | 38,625,649 | 12.7 |
| 11.0 | 12.3 | 10,555,870 | 4,450,100 | 95,962,454 | 36,179,674 | 132,142,128 | 11.4 |
| 7.1 | 21.8 | 3,684,740 | 1,924,830 | 51,897,746 | 8,829,495 | 60,727,241 | 9.2 |
| 12.0 | 13.3 | 7,509,910 | 4,486,600 | 62,582,583 | 33,733,834 | 96,316,417 | 12.5 |
| 19.8 | 19.7 | 19,648,390 | 34,821,085 | 99,234,292 | 176,756,276 | 275,991,068 | 19.7 |
| 10.1 | 9.1 | 12,452,780 | 3,442,400 | 123,294,851 | 37,828,571 | 161,123,422 | 9.9 |
| 9.6 | 11.9 | 4,938,290 | 1,634,690 | 51,440,520 | 13,736,890 | 65,177,410 | 10.1 |
| 7.1 | 14.3 | 7,094,070 | 5,043,300 | 99,916,478 | 35,267,832 | 135,184,310 | 9.0 |
| 4.5 | 14.3 | 8,166,820 | 980,000 | 181,484,888 | 6,853,146 | 188,338,034 | 4.9 |
| 13.1 | 16.4 | 7,762,300 | 6,737,960 | 59,254,198 | 41,085,121 | 100,339,319 | 14.5 |
| 7.7 | 10.5 | 3,430,535 | 1,238,740 | 44,552,402 | 11,797,523 | 56,349,925 | 8.3 |
| 6.5 | 8.3 | 3,139,950 | 1,054,560 | 48,306,923 | 12,705,542 | 61,012,465 | 6.9 |
| 11.6 | 14.9 | 6,705,080 | 12,019,280 | 57,802,413 | 80,666,308 | 138,468,721 | 13.5 |
| | | | | | | | |
| 7.7 | 12.2 | 17,899,530 | 20,895,165 | 232,461,428 | 171,271,844 | 403,733,272 | 9.6 |
| 7.3 | 15.9 | 4,998,000 | 3,033,600 | 68,465,753 | 19,079,245 | 87,544,998 | 9.2 |
| 8.0 | 11.0 | 4,103,590 | 507,740 | 51,294,875 | 4,615,818 | 55,910,693 | 8.2 |
| 8.4 | 11.8 | 8,916,290 | 11,266,810 | 106,146,309 | 95,481,440 | 201,627,749 | 10.0 |
| 6.7 | 15.1 | 4,627,800 | 2,478,480 | 69,071,641 | 16,413,774 | 85,485,415 | 8.3 |
| 10.3 | 14.9 | 16,305,305 | 11,496,360 | 158,303,932 | 77,156,778 | 235,460,710 | 11.8 |
| 12.2 | 24.7 | 5,276,440 | 12,989,130 | 43,249,508 | 52,587,570 | 95,837,078 | 19.1 |
| 19.0 | 26.3 | 12,934,550 | 23,578,720 | 68,076,578 | 89,652,927 | 157,729,505 | 23.1 |
| 6.7 | 10.5 | 8,347,670 | 7,640,510 | 124,592,089 | 72,766,761 | 197,358,850 | 8.1 |
| 9.2 | 12.5 | 11,951,130 | 2,629,640 | 129,903,586 | 21,037,120 | 150,940,706 | 9.7 |
| 8.9 | 11.4 | 9,235,253 | 7,833,323 | 103,766,887 | 68,713,359 | 172,480,246 | 9.9 |
| 9.9 | 16.0 | 13,914,375 | 65,848,025 | 140,549,242 | 411,550,156 | 552,099,398 | 14.4 |
| 10.5 | 12.9 | 4,526,800 | 3,190,830 | 43,112,380 | 24,735,116 | 67,847,496 | 11.4 |
| 15.2 | 17.5 | 6,051,220 | 7,953,725 | 39,810,657 | 45,449,857 | 85,260,514 | 16.4 |
| 8.1 | 11.2 | 5,634,650 | 4,082,410 | 69,563,580 | 36,450,089 | 106,013,669 | 9.2 |
| 7.5 | 12.3 | 4,161,740 | 1,708,550 | 55,489,866 | 13,890,650 | 69,380,516 | 8.5 |
| 5.3 | 12.5 | 4,084,990 | 1,467,250 | 77,075,283 | 11,738,000 | 88,813,283 | 6.3 |
| 11.4 | 15.1 | 3,992,000 | 3,041,520 | 35,017,543 | 20,142,516 | 55,160,059 | 12.8 |
| 9.9 | 9.9 | 6,314,470 | 16,996,710 | 63,782,525 | 171,683,939 | 235,466,464 | 9.9 |
| 12.0 | 13.8 | 7,061,220 | 10,688,240 | 58,843,500 | 77,451,014 | 136,294,514 | 13.0 |
| 27.2 | 26.7 | 264,192,349 | 639,456,437 | 971,295,400 | 2,394,967,928 | 3,366,263,328 | 26.8 |
| 27.8 | 26.7 | | | | | | |
| 26.4 | 26.8 | | | | | | |
| 13.0 | 15.4 | 4,356,370 | 2,780,770 | 33,510,538 | 18,056,948 | 51,567,486 | 13.8 |
| 10.0 | 14.3 | 13,487,578 | 29,580,947 | 134,875,780 | 206,859,769 | 341,735,549 | 12.6 |
| 7.4 | 9.0 | 10,071,152 | 1,868,258 | 136,096,648 | 20,758,422 | 156,855,070 | 7.6 |
| 8.0 | 16.5 | 8,317,540 | 26,255,013 | 103,969,250 | 159,121,290 | 263,090,540 | 13.1 |
| 8.5 | 12.1 | 10,044,085 | 8,232,485 | 118,165,705 | 68,037,066 | 186,202,771 | 9.8 |
| 11.2 | 10.6 | 6,302,502 | 451,335 | 56,272,339 | 4,257,877 | 60,530,216 | 11.2 |
| 8.0 | 15.4 | 4,237,400 | 5,504,640 | 52,967,500 | 35,744,415 | 88,711,915 | 11.0 |
| 21.5 | 23.3 | 25,931,340 | 165,575,620 | 120,610,883 | 710,624,978 | 831,235,861 | 23.0 |
| 8.6 | 16.0 | 9,994,485 | 7,379,630 | 116,214,941 | 46,122,687 | 162,337,628 | 10.7 |
| 9.4 | 11.9 | 4,966,752 | 4,889,957 | 52,837,787 | 41,092,075 | 93,929,862 | 10.5 |
| 10.4 | 16.9 | 15,169,940 | 19,124,890 | 145,864,807 | 113,165,029 | 259,029,836 | 13.2 |
| 16.8 | 19.2 | 53,656,990 | 216,348,340 | 319,386,845 | 1,126,814,270 | 1,446,201,115 | 18.7 |
| 13.2 | 20.7 | 9,003,890 | 4,886,290 | 68,211,287 | 23,605,265 | 91,816,552 | 15.1 |
| 9.2 | 17.8 | 20,286,860 | 109,023,760 | 220,509,347 | 612,493,033 | 833,002,380 | 15.5 |
| 9.6 | 17.9 | 22,755,860 | 40,296,290 | 237,040,104 | 225,118,938 | 462,159,042 | 13.6 |
| 8.0 | 19.5 | 5,666,380 | 2,871,220 | 70,829,750 | 14,724,205 | 85,553,955 | 10.0 |
| 6.7 | 14.3 | 5,740,000 | 3,480,290 | 85,671,641 | 24,337,692 | 110,009,333 | 8.4 |
| 14.2 | 23.1 | 4,414,200 | 10,507,310 | 31,085,915 | 45,486,190 | 76,572,106 | 19.5 |
| 6.8 | 8.0 | 3,469,020 | 2,386,080 | 51,015,000 | 29,826,000 | 80,841,000 | 7.2 |
| 11.4 | 16.1 | 8,368,360 | 12,635,520 | 73,406,666 | 78,481,490 | 151,888,156 | 13.8 |
| 6.4 | 11.9 | 5,107,702 | 12,829,018 | 79,807,843 | 107,806,873 | 187,614,716 | 9.6 |
| 8.9 | 12.5 | 9,083,790 | 3,892,360 | 102,065,056 | 31,138,880 | 133,203,936 | 9.7 |
| 9.9 | 10.7 | | | | | | |
| 8.0 | 14.7 | | | | | | |
| 9.3 | 20.0 | 7,553,500 | 4,168,900 | 81,220,430 | 20,844,500 | 102,064,930 | 11.2 |
| 7.8 | 11.4 | 7,135,462 | 19,796,680 | 91,480,282 | 173,655,087 | 265,135,369 | 10.2 |
| 6.3 | 9.4 | 13,417,520 | 7,980,240 | 212,976,507 | 84,896,170 | 297,872,677 | 7.2 |
| 12.5 | 17.9 | 26,785,170 | 53,543,580 | 214,281,360 | 299,126,145 | 513,407,505 | 15.6 |
| 8.3 | 11.4 | 10,491,460 | 8,800,930 | 126,403,132 | 77,201,140 | 203,604,272 | 9.5 |
| 5.6 | 10.3 | 10,813,400 | 460,680 | 193,096,428 | 4,472,621 | 197,569,049 | 5.7 |
| 9.4 | 17.3 | 4,969,940 | 1,574,320 | 52,871,702 | 9,100,115 | 61,971,817 | 10.6 |
| 8.9 | 13.3 | 4,296,610 | 3,269,020 | 48,276,516 | 24,579,097 | 72,855,613 | 10.4 |
| | | 902,629,415 | 1,767,702,033 | 7,457,900,433 | 9,101,450,101 | 16,559,350,534 | |
| 12.1 | 19.4 | | | | | | 16.1 |