Ralph P. EAGERTON, etc., et al.,
Plaintiffs-Appellees,

v.

VALUATIONS, INC., and United States
Fidelity & Guaranty Company,
Defendants-Appellants.

No. 80–7926.

United States Court of Appeals,
Eleventh Circuit.

Feb. 22, 1983.

Capell, Howard, Knabe & Cobbs, P.A., James R. Seale, Montgomery, Ala., for defendants-appellants.

Phillip C. Davis, Ron Bowden, Asst. Attys. Gen., Dept. of Revenue, Montgomery, Ala., Michael Smith, Eutaw, Ala., for plaintiffs-appellees.

Before HILL and VANCE, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

This is a contract dispute between state and county agencies and a real estate appraisal firm and its surety.[1] The parties involved are non-diverse and no federal question is presented. Prior to trial, plaintiffs alleged that the case was properly in federal court as an "ancillary" action to *Weissinger v. Boswell,* 330 F.Supp. 615 (M.D.Ala.1971). The district court exercised jurisdiction and awarded plaintiffs $296,488.10 in damages for the appraisal firm's breach of contract. The defendants did not question the court's jurisdiction, nor did they raise the issue on appeal. A member of this panel raised the question of subject matter jurisdiction at oral argument, and the parties were requested to file supplemental briefs on the issue. Having considered the question thoroughly, we conclude that the district court did not have subject matter jurisdiction to hear this case under the doctrine of ancillary jurisdiction.

I.

In *Weissinger,* a three judge district court determined that Alabama's ad valorem property tax was unconstitutional because corporate property was assessed at a substantially higher percentage of fair market value than other property in the state. The court therefore ordered that the property be reassessed to attain the proper equalization.[2] Pursuant to this order, the Alabama Legislature passed an act requiring the reappraisal of all property within the state for ad valorem tax purposes within two years of the Act's effective date of

---

1. Plaintiffs include the Commissioner of Revenue of Alabama, Hale and Greene Counties, Alabama and the County Commissioners of these counties. Defendants are Valuations, Inc., and its surety, United States Fidelity & Guaranty Company.

2. After determining that the existing assessment scheme was constitutionally infirm, the three-judge panel declared:

 The Court is aware of the impact of the present decision upon the tax structure of the state and its subdivisions, since the type of discriminatory treatment here involved is deep-seated and of long standing. For these reasons, the Court will give defendant a reasonable period of time, up to one year from the date of this opinion and order, to bring assessments throughout the state into conformity with the mandate of this opinion. It is so ordered.

 330 F.Supp. at 625.

January 9, 1972.[3] To implement the legislature's command, plaintiffs Hale and Greene Counties separately contracted with Valuations, Inc. to perform the necessary property reappraisal. These contracts were uniform documents approved by the state. In accordance with the terms of the contracts, United States Fidelity & Guaranty Company ("U.S.F. & G.") executed separate performance and payment bonds to guarantee completion of Valuations' undertaking in each of the counties. Valuations, in turn, subcontracted all of the mapping and appraisal duties to Allied Appraisal Company and subcontracted all necessary aerial photography work to Tobin Research, Inc.

The contract originally called for Valuations to submit invoices on a monthly basis to the Commissioner of Revenue who would then approve or disapprove the charges. Upon this approval, the county then would disburse the payments quarterly, but would withhold a ten percent retainage to be paid upon satisfactory completion of the project. At Valuations' request, county payments became a monthly practice so that subcontractors could be paid promptly for their services.

The Hale County contract was scheduled to be completed on June 1, 1975. On or about May 1, 1975, however, work reached a standstill because of payment disputes among the subcontractors. On May 11, 1975, the Commissioner of Revenue approved an invoice for the period of September 30, 1974, through May 1, 1975, and sent the approval to the county for payment June 9, 1975. The invoice was received by the chairman of the Hale County Commission who decided on his own not to make payment because of the standstill. Upon this refusal, the state sent Valuations a default notice on June 17, 1975, and allowed Valuations ten days to provide a firm schedule for completion. By then, however,

Valuations had closed its offices in the area. The contract was between 50 and 80 percent completed when the work stopped.

The Greene County contract was to be completed by July 31, 1976. On July 30, 1975, the state sent Valuations notice that there was substantial evidence that progress was insufficient to complete the required work by the date of completion.[4] Again Valuations was given ten days to provide a firm completion schedule. Instead, Valuations responded by shutting down its operations in Greene County on or about September 1, 1975. A formal declaration of default was conveyed to Valuations on September 17, 1975. On September 8, 1975, however, the Commissioner of Revenue received an invoice from Valuations covering the period December 1, 1974 through July 31, 1975. The invoice was approved and forwarded to the county on September 15, 1975. The then Acting County Attorney individually refused to make payment. The Greene County contract was between 20 and 40 percent completed upon its termination by the state.

In 1977, both projects were relet to another appraisal company at a higher price than the original contract with Valuations. Plaintiffs then initiated this action against Valuations and U.S.F. & G. for the full penal sums on each of the bonds on January 14, 1977. The district court found that Valuations breached both contracts by failing to respond to the notices of default with a firm schedule for completion. The court also found, however, that the individual county officials, who withheld payment from Valuations on state approved invoices, acted without proper authority. Nevertheless, neither improper withholding constituted a breach of the contract by the counties because Valuations, by an established course of dealings, indicated its assent to accept payments one to three months after

---

**3.** Act No. 160 of the Third Special Session of the 1971 Alabama Legislature was enacted "[t]o provide the manner and method by which Statewide Property Reappraisal shall be carried out and to spell out the responsibilities of all parties concerned and to provide for the enforcement of such a program by the Depart-

ment of Revenue of the State of Alabama." 1971 Ala. Acts 4404–05.

**4.** According to the terms of the contract, such "substantial evidence" was a ground for contract annulment.

submission of the invoice. The counties, therefore, were not in arrears when the contracts were formally revoked, and Valuations thus was unjustified in failing to perform the remaining work. The total cost of completion, which was the amount paid to Valuations and to the replacement appraisal company less the original contract price, was awarded to plaintiffs. Upon motion of U.S.F. & G., this amount was reduced to the amount of the surety's bonds.

## II.

Neither party nor the district court explored the question of subject matter jurisdiction. Indeed, the issue was mentioned only once. In a pre-trial conference, the parties reached a consensus that the present dispute simply was "another *Weissinger* case," involving the supervision of the *Weissinger* order.[5] Nevertheless, it is well established that subject matter jurisdiction cannot be waived or conferred on a court by consent of the parties. *E.g., American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–542, 95 L.Ed. 702 (1951); *People's Bank v. Calhoun,* 102 U.S. 256, 260–61, 26 L.Ed. 101 (1880); *Lowry v. International Brotherhood,* 259 F.2d 568, 575 (5th Cir.1958). Subject matter jurisdiction is an issue which can and must be raised by the court at any level of the proceeding. Fed.R.Civ.P. 12(h)(3); *e.g., City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47 (1941); *Texas v. Florida,* 306 U.S. 398, 405, 59 S.Ct. 563, 567, 83 L.Ed. 817 (1939); *Skidmore v. Syntex Laboratories, Inc.,* 529 F.2d 1244, 1248 n. 3 (5th Cir.1976).

Thus, ours is a continuing duty to scrutinize the basis of jurisdiction exercised by the district court. *See Warren G. Kleban Engineering Corp. v. Caldwell,* 490 F.2d 800, 802 n. 1 (5th Cir.1974) (citing *Mitchell v. Maurer,* 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934)). The district court purported to assert ancillary jurisdiction over plaintiff's contract claims. Upon review, we conclude that neither previous applications nor the policies underlying ancillary jurisdiction support its application in this instance.

Ancillary jurisdiction developed as an equitable doctrine during the nineteenth century. *See Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1861). Under the doctrine, a federal court, otherwise a court of limited jurisdiction, is empowered to adjudicate ancillary claims involving state law without an independent basis of jurisdiction. *See generally* 13 C. Wright & A. Miller, *Federal Practice & Procedure* ¶ 3523 (1975 & Supp.1980) [hereinafter *Wright & Miller*]. Implicit in the doctrine is the idea that a court "acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the disposition of the matter properly before it, it may decide other matters raised by the case . . . ." *Id.* at 56; *see also Caldwell,* 490 F.2d at 802.

Ancillary jurisdiction originally was applied in proceedings where non-diverse claimants sought to intervene in federal actions to protect interests in assets within the control of a federal court,[6] or in proceedings to protect and enforce the judgments of federal courts.[7] Modern practice

---

5. Supervision of the order remained with the three judge panel until a dissolution on August 26, 1980. Thereafter, supervision was assigned to a single district judge in the United States District Court for the Middle District of Alabama.

 In support of the district court's exercise of jurisdiction, plaintiff-appellees refer us to numerous orders issued by the district court ancillary to *Weissinger,* including *Green v. Russell County,* 603 F.2d 571 (5th Cir.1979), the only such order to reach the federal court of appeals. Our function, however, is to determine whether the district court had jurisdiction to decide plaintiffs' contract dispute. Our conclusions are based upon the facts of this pro-

ceeding and may or may not bear upon any other proceeding. Each case must be scrutinized individually for subject matter jurisdiction.

6. *See, e.g., Fulton National Bank v. Hozier,* 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925); *Stewart v. Dunham,* 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329 (1885); *Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1861).

7. *See, e.g., Dugas v. American Surety Co.,* 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720 (1937); *Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867).

has seen the expansion of its application;[8] however, ancillary jurisdiction may only operate "when there is a tight nexus with a subject matter properly in federal court." *Caldwell*, 490 F.2d at 802; *see also Amco Construction Co. v. Mississippi State Building Commission*, 602 F.2d 730, 733 (5th Cir. 1979); *Florida Medical Association v. HEW*, 601 F.2d 199, 202 (5th Cir.1979). This nexus or logical relationship between the main federal claim and the incidental state claim arises (1) when the same aggregate of operative facts serves as the basis for both claims or (2) when the core of facts supporting the original claim activates legal rights in favor of a party defendant that would otherwise remain dormant. *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 715 (5th Cir.1970).

 The district court's assertion of ancillary jurisdiction in this case was "to assure compliance with the judgment in *Weissinger* . . . ." In essence, by retaining jurisdiction in every proceeding incidentally related to Alabama's reappraisal scheme, the district court sought to maintain complete control over implementation of the *Weissinger* order. It is undisputed that the original three judge panel had jurisdiction to issue its order, and it is equally clear that a federal court may take those acts necessary to protect or effectuate that order.[9] "However, the rights asserted in an ancillary proceeding cannot be separate, inde-

pendent or coordinate of those asserted in the main proceeding." 13 *Wright & Miller*, § 3523 at 62 (1975); *see also Dugas*, 300 U.S. at 428, 57 S.Ct. at 521. A distinction must be drawn between those acts which are necessary to enforce a judgment or order and those which are done merely for the sake of procedural convenience and bear no relationship to the court's earlier exercise of constitutional or statutory jurisdiction.

The present dispute is virtually identical to *Warren G. Kleban Engineering Corp. v. Caldwell, supra,* an action for damages that the former Fifth Circuit dismissed for lack of subject matter jurisdiction.[10] *Caldwell* was indirectly related to a federal court desegregation order mandating the construction of new schools in a particular Mississippi county. *Caldwell* itself was an action by subcontractors against the school board for damages related to construction of two of the school buildings. *Id.* at 801. Although the district court adjudicated the contract dispute as an exercise of ancillary jurisdiction, *id.* at 802, the court of appeals ruled that jurisdiction of the school desegregation case did not carry with it ancillary jurisdiction over a subsequent dispute between contractors building the schools ordered by desegregation decree. As the court trenchantly observed:

The instant case is well outside the established bounds of ancillary jurisdiction.

---

8. The application of ancillary jurisdiction was significantly expanded in *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), when a federal court was allowed to adjudicate an ancillary compulsory counterclaim after the main federal antitrust claim was dismissed on the merits. The unification of law and equity which culminated with adoption of the Federal Rules of Civil Procedure also served to expand the use of incidental jurisdiction consistent with fairness to the parties. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966). As a result, Rule 13 compulsory counterclaims and cross claims as well as Rule 14 impleader actions are almost always viewed as ancillary. *See, e.g., Moore, supra,* (compulsory counterclaims); *Scott v. Fancher,* 369 F.2d 842 (5th Cir.1966) (cross-claims); *Dery v. Wyer,* 265 F.2d 804 (2d Cir.1959) (interpleader action).

9. Ancillary jurisdiction may be properly exercised to protect a judgment of a court through enforcement, *see, e.g., Central Georgia R.R. v. United States,* 410 F.Supp. 354 (D.D.C.), *aff'd, ICC v. Central Georgia R.R.,* 429 U.S. 968, 97 S.Ct. 474, 50 L.Ed.2d 578 (1976), or under certain circumstances to enforce a settlement decree. *See, e.g., Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). *But see, e.g., Fairfax Countywide Citizens Ass'n v. Fairfax County,* 571 F.2d 1299 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978).

10. As a former Fifth Circuit case, *Caldwell* is binding precedent on this court. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

Appellants have no connection with the desegregation of Pontotoc County schools, and the factual and legal issues are totally different from those in that federal questions case. As we view it, the issue here is not even close, for the exercise of ancillary jurisdiction neither fits within any conventional category, nor does it contribute at all to judicial efficiency and complete justice among the parties.

*Id.* at 802–03.

Similarly, the contract dispute before us fails to bear a logical relationship to the operative facts of the primary federal claims asserted in *Weissinger.* The gravamen of the *Weissinger* order was the constitutionality of appraisal disparities in Alabama's ad valorem taxing scheme. The gravamen of the present dispute is damage liability under Alabama contract law. Conceivably, this dispute could be tried without any mention of *Weissinger.* In terms of transactional analysis, therefore, no relationship exists between the operative facts and legal issues of the proceedings other than the fact that both tangentially involve reappraisal.

The district court also could not assert jurisdiction on grounds that *Weissinger* activated legal rights in favor of the party defendants, some of whom are plaintiffs in this contract dispute. *See Revere Copper & Brass,* 426 F.2d at 715. The type of actions which fall into this category include compulsory counterclaims, cross claims and impleader actions. *Id.* at 714–15. As the Supreme Court has stated," ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). Although plaintiffs originally were haled into court in the *Weissinger* case, their present contract claim arises solely under Alabama law and does not turn upon any of the factual or legal findings in *Weissinger.* Their state claims therefore lack the requisite logical dependence to permit federal court adjudication in the absence of an independent jurisdictional base, such as diversity.

Judicial economy also does not demand the exercise of jurisdiction in this instance simply because the parties already have tried the case. Although to decide the case at this point would avoid the time and effort of an identical trial in state court, such an exercise of jurisdiction would prove contrary to the jurisdictional limitations of federal tribunals. Unlike state courts, which are courts of general jurisdiction, federal courts are constrained by both the Constitution and the enactments of Congress. *See Owen,* 437 U.S. at 372, 98 S.Ct. at 2401; *Aldinger v. Howard,* 427 U.S. 1, 16–17, 96 S.Ct. 2413, 2421–2422, 49 L.Ed.2d 276 (1976). Neither the convenience of the litigants nor general considerations of judicial economy are sufficient to overcome these limitations. 437 U.S. at 377, 98 S.Ct. at 2404; 427 U.S. at 15, 96 S.Ct. at 2420; *see Mansfield, C. & L.M. Ry. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). Moreover, the judicial economy anticipated by an exercise of ancillary jurisdiction is the practical convenience of not having to bring a suit concurrently in state and federal court when the cause of action in each case arises out of essentially the same facts. *See generally United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). To send plaintiffs to state court to enforce their contract rights would not further this purpose because the operative facts bearing on the validity of the contract claim are completely different from those underlying the *Weissinger* order.

Finally, disposition of this contract dispute is not necessary to enforce the *Weissinger* order. This is not a case arising under Rule 60(b)(6) of the Federal Rules of Civil Procedure [11] or a similar action, where-

---

11. Rule 60(b) provides in part:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: . . .

in plaintiffs ask to be relieved from the burden of the *Weissinger* order because of the improper conduct of a third party. To the contrary, this is an independent action. The reappraisal work has been or is being completed by the replacement contractor, and all that remains is adjudication of who is liable for payment.[12]

For these reasons, we conclude that the district court did not have jurisdiction to render a judgment in plaintiffs' favor. That judgment is therefore vacated and the case remanded for dismissal.

VACATED and REMANDED with direction.

---

(6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b)(6).

12. The Commissioner of Revenue's original complaint alleged that the district court's failure to exercise jurisdiction would enable Valuations to frustrate implementation of the *Weis-* *singer* order by retaining completed work product. Record, vol. 1 at 3. When Hale and Green Counties entered the suit, however, the complaint was amended, and the allegation of retained work product was expressly dropped. *Id.* at 105. The material had been turned over thus rendering the allegation moot. *Id.* Only the issues of default and damages remained to be litigated. *Id.* at 107–08.