In re **TIDEWATER GROUP, INC., Debtor.**

**PROVIDERS FIDELITY LIFE INSURANCE COMPANY, Plaintiff and Third-Party Plaintiff,**

v.

**TIDEWATER GROUP, INC., Debtor-in-Possession and Defendant,**

and

**AMERICAN CENTENNIAL LIFE INSURANCE COMPANY, Third-Party Defendant,**

v.

**FIDUCIARY & GENERAL CORPORATION, Counterclaim Defendant.**

Bankruptcy No. 79–02872A.
Adv. No. 79–0028A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 13, 1986.

Ezra H. Cohen, Herbert D. Shellhouse, Judy E. Weisman, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for Providers Fidelity Life Ins. Co.

John L. Taylor, Jr., John G. Grubb, Jr., Chorey & Taylor, Atlanta, Ga., for American Centennial Life Ins. Co.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on a motion by Providers Fidelity Life Insurance Company ("Providers") to dismiss a third-party counterclaim filed by American Centennial Life Insurance Company ("American Centennial"). The procedural background of this adversary proceeding may be described briefly as follows: During the course of bankruptcy proceedings and with Court approval, the debtor, Tidewater Group, Inc. ("Tidewater"), contracted with Providers to sell Providers all the stock of its subsidiary corporation, American Centennial. Providers refused to go through with the transaction and sued Tidewater in 1979 to recover the earnest money. Tidewater counterclaimed with a breach of contract action. Providers filed a third-party complaint against American Centennial, alleging that American Centennial caused the breach by misrepresenting its financial condition. American Centennial filed its counterclaim against Providers on March 5, 1980, alleging various breach of contract and tort causes of action. On May 7, 1986, this Court approved a settlement between Tidewater and Providers in which all claims, except American Centennial's counterclaim against Providers, were dismissed. Providers filed the motion to dismiss American Centennial's counterclaim on June 4, 1986, alleging that this Court has no subject matter jurisdiction to adjudicate this adversary proceeding. *See* Fed.R.Civ.P. 12(b)(1).

The issue before the Court is whether the Bankruptcy Court has subject matter jurisdiction under 28 U.S.C. § 1334 over an adversary proceeding instituted by Providers against the debtor, but now limited by stipulation to matters between Providers and the debtor's subsidiary, when the proceeding arose out of a judicial sale of property of the debtor's estate.

Providers' main contention is that ancillary jurisdiction over American Centennial's counterclaim cannot exist because the third-party complaint against American Centennial was "defective at its inception." Reply Brief to American Centennial Life Insurance Company's Brief in Opposition to Providers Fidelity Life Insurance Company's Motion to Dismiss at p. 6 (hereafter, "Reply Brief"). Thus, since the Court had no jurisdiction with respect to the defective pleading, Providers argues, it has no jurisdiction as to any pleading growing out of that defective pleading.

Leaving aside the question of whether Providers should be heard to argue that its own third-party complaint was defective, the contention appears to be incorrect because Providers, contrary to its assertion in

its Reply Brief, did allege a right of contribution or indemnity against American Centennial in the third-party complaint:

> Further if, as a result of the matters alleged in Defendants' counterclaims, Providers Benefit should become liable to the Defendants or either of them (all liability being denied by Providers Benefit), then in that event American Centennial should be held solely or primarily liable for all or part of any such loss for any such amount under the common law of indemnity and the law of contribution.

Third-Party Complaint by Providers Benefit Life Insurance Company Against American Centennial Life Insurance Company on Both Defendants' Counterclaims at Paragraph # 6.

Assuming, without deciding, that the impleader of American Centennial was proper, the District Court for the Northern District of Georgia, of which this Bankruptcy Court is a unit, has subject matter jurisdiction over this proceeding. 28 U.S.C. § 1334 provides in part:

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11....

28 U.S.C. § 1334(b).

■ Under § 1334(b), the Court has jurisdiction over Providers' adversary proceeding against Tidewater (where American Centennial argues the jurisdictional analysis should begin) and over Tidewater's counterclaim (where Providers argues the analysis should begin since this was the first step in getting American Centennial into Court). Both Providers' original complaint and Tidewater's counterclaim arose in or were related to Tidewater's title 11 case under the test of *In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the *outcome of that proceeding could conceiva-*

*bly have any effect on the estate being administered in bankruptcy....*

*Id.* at 802 (emphasis in original). *Accord In re United States Air Duct Corp,* 8 B.R. 848, 851 (N.D.N.Y.1981); 1 *Collier on Bankruptcy* ¶ 3.01[1][C][VI].

■ An alternative jurisdictional grant as to the adversary proceeding and the counterclaim is found at 28 U.S.C. § 1334(d), which gives the District Court jurisdiction of all of the property of the debtor as of the commencement of the case including, here, Tidewater's stock in American Centennial.

■ Once jurisdiction attaches over these claims, the Court has ancillary jurisdiction over related counterclaims and the third-party complaint if those claims bear "a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction." *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 714 (5th Cir.1970). Thus, the Court had ancillary jurisdiction over American Centennial's counterclaim and will retain jurisdiction even though the other related claims have been dismissed or settled. Once ancillary jurisdiction attaches to a claim in a complicated case, the Court may, with a few exceptions not applicable here, choose to retain jurisdiction over it after the claim with an independent jurisdictional basis has been dismissed. *See, e.g., IMFC Professional Services of Florida, Inc. v. Latin American Home Help, Inc.,* 676 F.2d 152, 159 (5th Cir. Unit B. 1982); *see also* Wright & Miller, *Federal Practice & Procedure* § 1414.

■ While agreeing with the statement of law that once ancillary jurisdiction properly attaches a court can retain such jurisdiction regardless of how or when the original dispute is resolved, Providers' reply argues that ancillary jurisdiction never properly attached in the first place because of its defective Rule 14 impleader of American Centennial. The problem with this argument is found in Providers' own Reply

Brief: "Rule 14 is a procedural device only. It does not extend jurisdiction." Reply Brief at p. 6 (citing *Kantlehner v. United States*, 279 F.Supp. 122 (E.D.N.Y.1967)). Thus, whether or not American Centennial was a proper party to implead has nothing to do with whether subject matter jurisdiction exists.

It may be that American Centennial should have been joined as a defendant in Providers' original proceeding against Tidewater rather than as a third-party defendant. *See* Fed.R.Civ.P. 19 & 20; Bankr. R. 7019 & 7020. However, whatever procedural device was used to get American Centennial into the Bankruptcy Court does not constitute the source of jurisdiction. Instead, jurisdiction attached as explained above under the authority of 28 U.S.C. § 1334 as ancillary to a claim arising in or related to a title 11 case.

■ Note also that no order heretofore entered has found improper jurisdiction over Providers' third-party complaint and that American Centennial had moved to dismiss the claim on procedural grounds prior to its voluntary dismissal. So, Providers' present assertion of "lack of jurisdiction" in its own third-party complaint is without merit not only because the impleader is not jurisdictional, but also because Providers should not be heard to object to its own third-party complaint. As a procedural device not constituting a source of subject matter jurisdiction, the "improper" impleader could have been waived by American Centennial or objected to only by American Centennial.

■ As an alternative ground to holding that there is ancillary jurisdiction over American Centennial's counterclaim, this Court finds that it has original, not ancillary, jurisdiction over the counterclaim under 28 U.S.C. § 1334(b). As stated earlier, the test for "related to" jurisdiction is whether there could conceivably be an effect on the estate. *See Bobroff, supra.*

Here, American Centennial is seeking large amounts of actual and punitive damages in its claim against Providers. If American Centennial were to prevail fully and receive a multi-million dollar verdict, as American Centennial argues in its brief, it is possible that all of American Centennial's creditors' claims could be paid in full, with some money remaining. If money did remain, under normal corporate liquidation rules, the excess would be distributed to the sole shareholder of American Centennial, the debtor in this case, Tidewater.

In this case, American Centennial's brief continues, if American Centennial were to prevail and recover all that it has requested or will request, it is "conceivable" that Tidewater's estate would ultimately be benefited. The Court agrees that such facts, in conjunction with the other ties between this adversary proceeding and the bankruptcy case, would establish "related to" jurisdiction under 28 U.S.C. § 1334.

■ While Providers denies that any potential benefit to the estate exists, this Court analogizes this case to the situation involving the jurisdictional amount wherein a diversity case will not be dismissed unless it is clear to a legal certainty that plaintiff could not possibly recover at least $10,000. *See, e.g., Miami Beach Yacht Corp. v. Ferro Corp.*, 461 F.2d 770 (5th Cir.1972). Thus, when considering a claim having such other connections to the bankruptcy case, as American Centennial's counterclaim has, only if it appears to a legal certainty that there is no potential benefit to the estate under administration will a claim be found to be not "related to" a case under title 11.

■ Finally, Providers' argument that American Centennial's counterclaim is based on state law and hence could not be within a federal court's subject matter jurisdiction is without merit. If ancillary jurisdiction attached, no independent federal jurisdictional basis is required. *See, e.g., Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). If the claim is within the § 1334 grant without being ancillary to another claim (i.e. if it itself is "related to" a Title 11 case), this does not mean state law will not

apply, as any "related to" claim could be grounded in state law.

Accordingly, it is ORDERED that Providers' motion to dismiss the counterclaim by American Centennial be DENIED.