**In re ALPHA STEEL COMPANY, INC., Debtor. (Two Cases)**

**SOUTHTRUST BANK OF DOTHAN, N.A., Plaintiff,**

v.

**ALPHA STEEL COMPANY, INC., et al., Defendants.**

**SOUTHTRUST BANK OF DOTHAN, N.A., Appellant,**

v.

**ALPHA STEEL COMPANY, INC., et al., Appellees.**

Civ. A. Nos. 91–T–1127–N, 91–T–1205–N.

District Court of United States, M.D. Alabama, N.D.

June 18, 1992.

counsel participated in any way in misleading the bankruptcy court.

James D. Farmer, Farmer, Farmer & Malone, Dothan, Ala., Robert K. Spotswood, John H. Morrow, Patrick Darby, Bradley, Arant, Rose & White, Birmingham, Ala., for plaintiff SouthTrust Bank of Dothan.

Kenneth R. Jones, Georgiana, Ala., trustee.

Collier H. Espy, Jr., Dothan, Ala., for defendant Alpha Steel Co.

Ernest H. Hornsby, Farmer, Price, Smith, Hornsby & Weatherford, Dothan, Ala., C. Walker Ingraham, Martin, Cavan & Andersen, Atlanta, Ga., for defendant Bates & Associates.

James E. Wilson, U.S. Atty., Patricia Conover, Calvin Pryor, Asst. U.S. Atty., Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

In a Chapter 7 bankruptcy proceeding brought in the United States Bankruptcy Court for the Middle District of Alabama, SouthTrust Bank of Dothan, N.A., a creditor, filed a complaint for a declaration of its rights relative to those of other creditors of Alpha Steel Company, Inc., the debtor.

One of those other creditors, Bates & Associates, Inc., responded to SouthTrust Bank's lawsuit with a three-count counterclaim against the bank. The bankruptcy court determined that it lacks subject-matter jurisdiction over two of the three counts of the counterclaim.

The action of the bankruptcy court is now before this court by way of two routes: in civil action no. 91–T–1205–N, Southtrust Bank has appealed the decision of the bankruptcy court; and, in civil action no. 91–T–1127–N, the bankruptcy court has transferred the two counts to this court for disposition. For reasons that follow, this court agrees that the bankruptcy court lacks jurisdiction over the two counts.

## I. BACKGROUND

In the spring of 1990, Alpha Steel Company, Inc., submitted a bid to furnish and erect certain steel components in the construction of a public project. In considering Alpha Steel's bid, Bates & Associates, Inc., the general contractor, contacted SouthTrust Bank and inquired as to Alpha Steel's finances, operating ability, and background. After receiving the requested information, Bates awarded the subcontract to Alpha Steel, and Alpha Steel started obtaining steel materials from a number of its suppliers.

In August of 1990, SouthTrust Bank informed Bates that Alpha Steel had obtained a Small Business Administration loan from the bank, and that Alpha Steel had pledged the proceeds of the subcontract to the bank as collateral. According to Bates, it expressed some concerns to SouthTrust Bank about the effect of the pledge upon Alpha Steel's ability to pay its material suppliers. After receiving reassurances from the bank as to Alpha Steel's financial health, however, Bates agreed to start issuing payments under the subcontract and issued a check in the amount of $616,939.37 payable jointly to Alpha Steel and SouthTrust Bank. The check was deposited in Alpha Steel's account at SouthTrust Bank, and the bank applied a portion of the check to Alpha Steel's outstanding loan.

Alpha Steel later filed a petition in bankruptcy. SouthTrust Bank responded to the bankruptcy proceeding by filing, among other things, a complaint for declaratory judgment against Alpha Steel, Bates and the Small Business Administration, contending that the bank holds a security interest in Alpha Steel's accounts receivable, contract rights, inventory, and inventory proceeds. Bates responded to the bank's complaint by filing an answer disputing SouthTrust's claims of priority; Bates maintains that, because it paid for Alpha Steel's steel materials in advance and because the materials were identified and segregated from Alpha Steel's general inventory, it acquired an interest in the materials and the proceeds of the materials.

Bates also filed a three-count counterclaim against SouthTrust Bank. In count one of its counterclaim, Bates contends that various suppliers of materials to Alpha Steel were not paid and that they have filed claims for payment against Bates' payment bond on the project. Bates argues that its $616,939.37 payment to Alpha Steel and SouthTrust Bank created a "constructive trust" for the benefit of the suppliers, which must be used to satisfy Alpha Steel's debt to the suppliers rather than to offset Alpha Steel's outstanding loan from SouthTrust Bank.

In count two of its counterclaim, Bates contends that SouthTrust Bank's representations concerning Alpha Steel's financial health and ability to perform the subcontract, made in response to Bates's inquiries before it contracted with Alpha Steel, were fraudulent and that Bates relied on these statements in choosing to enter into the subcontract with Alpha Steel. In count three, Bates charges that SouthTrust Bank fraudulently induced it to make the $616,939.37 payment by misrepresenting Alpha Steel's financial condition and ability to pay its suppliers.

The bankruptcy court found that, although it has subject-matter jurisdiction over the constructive-trust theory in count one, it lacks jurisdiction over the two counts charging fraud. The above-styled causes now before this court then ensued.

In civil action no. 91–T–1205–N, SouthTrust Bank appeals the decision of the bankruptcy court finding no jurisdiction over the two fraud counts; and, in civil action no. 91–T–1127–N, the bankruptcy court transferred the two fraud counts to this court for trial. The bankruptcy court transferred rather than dismissed the two counts because, according to the bankruptcy court, although this court and bankruptcy court lack bankruptcy jurisdiction, this court still has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C.A. § 1332; Bates and SouthTrust Bank are citizens of different states.

## II. DISCUSSION

### A.

■ The bankruptcy jurisdiction of federal district and bankruptcy courts is governed by § 1334 and § 157 of Title 28 of the United States Code. Section 1334(b) grants district courts jurisdiction of "all civil proceedings [1] arising under title 11 or [2] arising in or [3] relating to cases under title 11." Section 157 then provides the district courts with the authority to refer any proceeding under § 1334 to the bankruptcy judges for the district and gives the bankruptcy court jurisdiction to hear it. The parties do not contend that the two fraud claims in question either "arise under" Title 11 [1] or "arise in" a Title 11 case.[2] Therefore, the sole question for review is whether the claims "relate to" Alpha Steel's bankruptcy case such that they may he heard in the bankruptcy court.

The Eleventh Circuit Court of Appeals has held that the test for determining whether a civil proceeding is related to a bankruptcy case is "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir.1990) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). In other words, "if the resolution of litigation cannot affect the administration of the estate, the bankruptcy court does not have jurisdiction to decide it." *In re Gallucci,* 931 F.2d 738, 742 (11th Cir.1991). An action "affects" the estate if its outcome could "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Lemco Gypsum,* 910 F.2d at 788.

SouthTrust Bank argues that the two fraud claims "relate to" the bankruptcy proceeding in the same manner as does the constructive-trust claim. The constructive-trust claim, according to the bank, could conceivably affect the bankruptcy proceedings in two ways. The bank maintains that if Bates prevails: first, the suppliers will be able to seek payment from the constructive trust rather than from the bankruptcy estate; and, second, SouthTrust Bank's claim against Alpha Steel's bankruptcy estate would be larger because the bank could no longer offset the $616,939.37 payment against Alpha Steel's loan.

However, assuming that the constructive-trust scenario has merit, the court is not convinced that it carries over to the two fraud claims.[3] First, the ability of the suppliers to recover outside the estate will not be enhanced. Although Bates seeks compensation from SouthTrust Bank for the damages it suffered as a result of being induced to contract with Alpha Steel and to disburse the check in question, there is no suggestion that Bates intends to turn over

---

1. Proceedings "arise under" Title 11 when they "involve a cause of action created or determined by a statutory provision of title 11." *In the Matter of Wood,* 825 F.2d 90, 96 (5th Cir.1987). 1 Collier On Bankruptcy ¶ 3.01[c][iii], pp. 3–24 to 3–26 (15th ed. 1991).

2. Proceedings "arising in" Title 11 cases are generally " 'administrative' matters that arise *only* in bankruptcy cases," *In the Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987) (emphasis in original),

that is, claims "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside the bankruptcy." *Id.* 1 Collier On Bankruptcy ¶ 3.01[c][[v], pp. 3–29 to 3–30 (15th ed. 1991).

3. The court has only "assumed" that the bankruptcy court has jurisdiction over the constructive-trust claim; this jurisdictional issue is not before the court.

any of its recovery to either Alpha Steel or the suppliers; any money Bates recovered would go to Bates. *See Lemco Gypsum,* 910 F.2d at 789. Second, any recovery by Bates based on the bank's fraud would not be binding on Alpha Steel. The claims at issue do not charge Alpha Steel with fraud or other misconduct, nor do they seek damages from Alpha Steel or rescission or modification of the subcontract. *See P & S Business Machines, Inc. v. Olympia U.S.A., Inc.,* 707 F.2d 1321, 1324 (11th Cir. 1983); *Johnny Spradlin Auto Parts, Inc. v. Cochran,* 568 So.2d 738, 744 (Ala.1990); *Spanish Fort Mobile Homes v. Sebrite Corp.,* 369 So.2d 777 (Ala.1979); *Ringer v. First Nat'l Bank,* 291 Ala. 364, 281 So.2d 261, 264–65 (1973). Bates' recovery from the bank would not estop Alpha Steel from continuing to claim that the payment it and the bank received from Bates must be used to offset Alpha Steel's loan.

This last conclusion is supported by the decision of the Third Circuit Court of Appeals in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). There, the plaintiff brought suit in state court against an asbestos supplier seeking damages relating to his exposure to the chemical. The supplier filed a third-party complaint against the asbestos manufacturer seeking indemnification. Shortly thereafter, the manufacturer filed for bankruptcy, and the entire case was removed to the bankruptcy court. On appeal, the court held that, although the third-party complaint was properly before the bankruptcy court, the plaintiff's claims against the supplier were not, even though their resolution could determine whether the supplier would need to seek indemnification against the manufacturer in bankruptcy court. The court reasoned that:

> "At best, one could say that a judgment against the plaintiff on the primary claim would make absolutely certain that the [bankrupt's] estate could never be adversely affected. This does not prove the converse, however, that a judgment in favor of the plaintiff Higgins necessarily does effect the estate. The fact remains that any judgment received by the plaintiff Higgins could not itself re-

sult in even a contingent claim against [the manufacturer], since [the supplier] would still be obligated to bring an entirely separate proceeding to receive indemnification."

*Id.* at 995. Similarly here, because Alpha Steel would not be a party to any judgment Bates might obtain against SouthTrust Bank, the judgment could not affect Alpha Steel's interest in the payment it received from Bates.

■ In addition, SouthTrust Bank misconceives the "cause-effect" relationship between the two fraud claims and the bankruptcy proceeding. The resolution of the fraud claims is dependent on the bankruptcy action because the degree to which Bates can claim that it has suffered from having been induced into doing business with Alpha Steel depends on its ability to obtain satisfaction from the bankrupt estate; in other words, Bates may recover on its fraud claims only to extent that Bates was damaged by Alpha Steel's insolvency. As is stated in the Restatement (Second) of Torts § 549 cmt. a (1977),

> "the loss for which the plaintiff can recover [from a defendant who misrepresented the financial condition of a third party] is that suffered because of the third person's inability to meet the credit extended to him. If the third person pays nothing, the loss recoverable is the entire amount of the credit extended. If the third person pays in part, the loss recoverable is the residue remaining unpaid by him."

Therefore, because Bates' two fraud claims seek to recover from the bank those damages that Bates has allegedly incurred as a result of Alpha Steel's insolvency but which it cannot recover from the estate, the "cause-effect" relationship between the fraud claims and the bankruptcy proceeding is not that the fraud claims will have an effect on the bankruptcy proceedings but rather that the bankruptcy proceedings will have an effect on the fraud claims. However, "relate to" jurisdiction is triggered not by a bankruptcy proceeding which could have an effect on a non-bankruptcy claim, but rather by a non-bankruptcy

claim which could have an effect on a bankruptcy proceeding. The following two cases illustrate this point. In *National City Bank v. Coopers and Lybrand,* 802 F.2d 990 (8th Cir.1986), the court held that a creditor's suit against the its accountants for negligence, fraud, and breach of contract, which charged that the accountants' audits should have revealed defects in the perfection of the creditor's security interests in the bankrupt debtor's accounts receivable, was not "related to" the bankruptcy. In *Wayne Film Systems v. Film Recovery Systems,* 64 B.R. 45 (N.D.Ill. 1986), the court held that a creditor's suit against the bankrupt debtor's officers and directors which sought to hold them liable for its claims against the debtor, was not "related to" the bankruptcy. *See also Lemco Gypsum,* 910 F.2d at 789 ("Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of assets among creditors"); 1 Collier On Bankruptcy ¶ 3.01[c][vi], pp. 3–30 to 3–31 (15th ed. 1991).

### B.

■ SouthTrust Bank argues in the alternative that, even if the two fraud counts do not "relate to" the bankruptcy proceeding, the bankruptcy court may still hear the claims pursuant to the twin doctrines of ancillary and pendent jurisdiction. Traditionally, pendent jurisdiction is invoked to a allow a plaintiff to bring in federal court those state-law claims "derived from a common nucleus of operative fact" with the plaintiff's federal cause of action. *Prater v. United Mine Workers of America,* 793 F.2d 1201, 1207 (11th Cir. 1986) (quoting *United Mineworkers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). Ancillary jurisdiction commonly arises when the "same aggregate of operative facts" serves as the basis for both the subject matter properly in federal court and a claim over which the court would have no independent jurisdiction, such as with a compulsory counterclaim or cross-claim. *Eagerton v. Valuations, Inc.,* 698 F.2d 1115, 1118 (11th Cir. 1983).

SouthTrust Bank invokes both theories of jurisdiction. First, the bank asserts, generally, that the relationship between its underlying declaratory judgment action and Bates' two fraud claims supports the exercise of ancillary jurisdiction, and, more specifically, that the fraud claims are compulsory counterclaims. In support of these assertions, the bank argues that the declaratory judgment action arises out of the same transaction—the subcontract between Bates and Alpha Steel. Second, the bank argues that, even if the fraud claims cannot be characterized as compulsory counterclaims, the commonality between the fraud claims and the constructive-trust claim supports the exercise of pendent jurisdiction by the bankruptcy court. The bank contends that the bankruptcy court has pendent jurisdiction over the two fraud counts based on its independent "relating to" jurisdiction over the constructive-trust claim.

Although a number of bankruptcy courts have held that the doctrines of ancillary and pendent jurisdiction are applicable to bankruptcy courts, *see Wieboldt Stores, Inc. v. Schottenstein,* 111 B.R. 162 (N.D.Ill. 1990); *In re Aerni,* 86 B.R. 203 (Bankr. D.Neb.1988); *In re Direct Satellite Communications, Inc.,* 91 B.R. 5 (Bankr. E.D.Pa.1988); *In re Tidewater Group,* 63 B.R. 670 (Bankr.N.D.Ga.1986); *In re Coral Petroleum, Inc.,* 62 B.R. 699 (Bankr. S.D.Tex.1986); *In re Wood,* 52 B.R. 513 (Bankr.N.D.Ala.1985); *In re WWG Ind., Inc.,* 44 B.R. 287 (Bankr.N.D.Ga.1984), this court is not altogether convinced that these doctrines should be used to extend the jurisdiction of bankruptcy courts to claims which are beyond the "arising in" and "relate to" scope of § 1334(b). No appellate courts have yet ruled on this question, and the bankruptcy court decisions relied upon by SouthTrust Bank invoke notions of judicial economy and procedural convenience as principal justifications for extending to themselves the authority to exercise this kind of supplemental jurisdiction. *See, e.g., In re Aerni, supra.* However, the Eleventh Circuit has stated that "Judicial economy itself does not justify federal jurisdic-

tion." *Lemco Gypsum,* 910 F.2d at 789. Furthermore, there are a number strong related arguments that could be advanced to support the position that the "relate to" and "arising in" jurisdictional components of § 1334(b) already allow bankruptcy courts to hear, to the extent Congress intended, all supplementary claims that have a logical relationship to an underlying bankruptcy proceeding. First, the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive "relate to" and "arising in" jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous. Second, to the extent that ancillary and pendent jurisdiction could be viewed as supplementing rather then supplanting "related to" and "arising in" jurisdiction, a bankruptcy court exercising the former could hear claims which, in effect, merely relate to claims which themselves have only a relate-to connection with the primary case. Finally, the recent Congressional amendments codifying and merging the doctrines of ancillary and pendent jurisdiction expressly apply only to district courts. 28 U.S.C.A. § 1367 (West Supp.1991). Fortunately, this court need not address these difficult arguments because, assuming that bankruptcy courts have the supplemental authority to exercise ancillary and pendent jurisdiction, the bankruptcy court here still properly refused to exercise such jurisdiction over Bates' two fraud claims.

■ With regard to SouthTrust Bank's ancillary jurisdiction argument, the court concludes that the bankruptcy court's jurisdiction over the two fraud claims cannot be supported by general notions of ancillary jurisdiction, nor, more specifically, can the fraud claims be properly characterized as compulsory counterclaims. According to the Eleventh Circuit, a court must engage in a two-part inquiry to determine whether ancillary jurisdiction is present:

"Ancillary jurisdiction may only operate when there is a tight nexus with a subject matter properly in federal court.

This nexus or logical relationship between the main federal claim and the incidental state claim arise (1) when the same aggregate of operative facts serves as the basis for both claims or (2) when the core of facts supporting the original claim activates legal rights in favor of a party defendant that would otherwise remain dormant."

*Eagerton,* 698 F.2d at 1119 (citations omitted). Rule 13(a) of the Federal Rules of Civil Procedure similarly provides that a compulsory counterclaim is one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." [4] Although at a certain level of generality both the underlying declaratory judgment action and the fraud claims arise out of same ongoing "transaction"—the subcontract between Alpha Steel and Bates—the required commonality of facts is absent. *See Republic Health v. Lifemark Hosps.,* 755 F.2d 1453, 1455 (11th Cir.1985); *Eagerton,* 698 F.2d at 1119. The fraud claims involve two sets of communications between Bates and SouthTrust Bank, the first which allegedly led Bates to contract with Alpha Steel, and the second which allegedly induced Bates to make the $616,939.37 payment. At issue will be whether SouthTrust Bank misrepresented Alpha Steel's financial health at either time. *See McAlister v. Deatherage,* 523 So.2d 387, 390 (Ala.1988); *Cherokee Farms, Inc. v. Fireman's Fund Ins. Co.,* 526 So.2d 871, 875 (Ala.1988). In contrast, SouthTrust's declaratory judgment action primarily revolves around the creditors' relative rights, under the Bankruptcy Code and Alabama's commercial code, to Alpha Steel's inventory, namely the steel material Alpha obtained from its suppliers.

■ Turning to SouthTrust Bank's pendent jurisdiction argument, this court must conclude—assuming not only that the bankruptcy court had the authority to exercise pendent jurisdiction but assuming fur-

**4.** Bankruptcy Rule 7013 incorporates Rule 13(a) of the Federal Rules of Civil Procedure, which governs compulsory counterclaims.

ther that the fraud claims were pendent to the constructive-trust claim—that the bankruptcy court still properly refused to exercise pendent jurisdiction. The exercise of pendent jurisdiction is discretionary and turns upon the policies of judicial economy, convenience, and fairness to the litigants. *Prater v. United Mine Workers of America,* 793 F.2d 1201, 1207–08 (11th Cir.1986). Here, all three factors counsel overwhelmingly against the remand of the two fraud claims back to the bankruptcy court for the exercise of such jurisdiction. This proceeding began in the bankruptcy court with SouthTrust Bank's filing of its complaint, was transferred to the district court when Bates requested a jury trial on its counterclaims, and was transferred back to the bankruptcy court when the parties agreed to submit to a jury trial in that court. When the bankruptcy court's jurisdiction over counts two and three of the counterclaim were called into question, those counts were transferred back once again to this court. The two fraud claims have, therefore, already been shuttled between the district and bankruptcy courts at least three times, and to transfer them again would only cause further delay and confusion. In contrast, this court has unquestioned jurisdiction and is prepared to set them down for trial immediately or whenever the parties are ready.[5]

An appropriate judgment will be entered in accordance with this memorandum opinion.

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, AND DECREE of the court:

(1) That, in civil action no. 91–T–1205–N, the decision of the United States Bankruptcy Court for the Middle District of Alabama holding that it lacks jurisdiction over the two fraud claims in the counterclaim filed by Bates & Associates, Inc., against SouthTrust Bank of Dothan, N.A., is affirmed, with the costs is this case taxed against SouthTrust Bank of Dothan, N.A.; and

(2) That, in civil action no. 91–T–1127–N, the court accepts jurisdiction based on diversity of citizenship, 28 U.S.C.A. § 1332, over the two fraud claims in the counterclaim filed by Bates & Associates, Inc., against SouthTrust Bank of Dothan, N.A., in the United States Bankruptcy Court for the Middle District of Alabama.

---

**5.** Section 157(d) of Title 28 also gives district courts the authority to withdraw any proceeding referred to a bankruptcy judge. For the above reasons of judicial economy, convenience, and fairness to the litigants, this court concludes, alternatively, that in civil action no. 91–T–1127–N the two fraud claims should be withdrawn pursuant to § 157(d). *Holland Amer. Ins. Co. v.*

*Succession of Roy,* 777 F.2d 992, 999 (5th Cir. 1985) (in deciding whether to withdraw reference from bankruptcy court, the district court should consider the goals of "fostering the economical use of the debtor's and creditor's resources, and expediting the bankruptcy process").