MANWAY CONSTRUCTION COMPANY, INC., et al., Plaintiffs,

v.

HOUSING AUTHORITY OF The CITY OF HARTFORD, et al., Defendants-Appellees,

Hartford National Bank & Trust Co., Garnishee-Appellant.

No. 1071, Docket 82–7659.

United States Court of Appeals, Second Circuit.

Argued April 6, 1983.

Decided July 11, 1983.

entitled to assert in support of the judgment any valid ground established in the record.

**502**

Steven R. Humphrey, Hartford, Conn. (Robinson, Robinson & Cole, Hartford, Conn., on the brief), for garnishee-appellant.

Morris Apter, Hartford, Conn., for defendants-appellees.

Before KAUFMAN, TIMBERS and NEWMAN, Circuit Judges.

TIMBERS, Circuit Judge:

Hartford National Bank & Trust Co. (Bank) appeals from an order entered in a post-judgment proceeding in the District of Connecticut, Thomas F. Murphy, *District Judge,* adjudging the Bank in civil contempt for its failure to pay certain sums of money to appellee Housing Authority of The City of Hartford (Authority). The district court held the Bank in contempt from the bench on July 20, 1982, followed by written findings of fact, conclusions of law, and an order filed August 9. The Bank filed its notice of appeal on August 17. On August 19 the district court granted a stay of the contempt order pending disposition of the appeal. We hold that the district court lacked jurisdiction over the Authority's claims against the Bank. We vacate the contempt order.

1. Pursuant to Conn.Gen.Stat. § 52–329 (1981).

**I.**

Manway Construction Company (Manway) and Damar Construction Company (Damar) contracted in 1968 with the Authority to build a housing development in Hartford. Once construction had begun, disputes arose between the parties to the contract concerning such matters as the progress of the project and the quality of the work. To resolve these disputes, the parties entered into a supplemental agreement on October 23, 1970. Pursuant to this agreement the completion schedule was amended and the contractors agreed to undertake certain corrective work. As security for their satisfactory performance, Manway and Damar agreed to purchase a certificate of deposit in the amount of $100,000 to be held in the name of the Authority until March 31, 1971. At the expiration of that period, it was agreed that the funds would either be returned to the contractors or be turned over to the Authority, depending on whether Manway and Damar had satisfied their obligations.

On October 26, 1970, Manway and Damar purchased the requisite certificate of deposit from the Bank. This certificate carried an interest rate of 6.75% per annum and a maturation date of March 31, 1971. On January 6, 1971, the uneasy truce that had been negotiated the previous October erupted again into open dispute. Manway and Damar commenced an action against the Authority in the District of Connecticut for breach of contract. The $100,000 certificate of deposit, held by the Bank in the name of the Authority, was garnished by plaintiffs.[1]

After the certificate matured on March 31, the Bank did not reinvest the funds. Instead, it awaited notification from the parties. For almost five years the Bank received no instructions regarding reinvestment or disposition of the proceeds. In December 1975, Manway and Damar inquired of the Bank as to the steps necessary for reinvestment of the funds while the breach of contract action proceeded. On January 8, 1976, the Authority requested

that the Bank reinvest the funds in a 90-day certificate and that it continue to reinvest (or "roll over") the funds until further notice. The Bank complied with this request. The funds were reinvested continuously from January 1976 on.

On August 17, 1981, judgment was entered by the district court in favor of the Authority against Manway and Damar in the breach of contract action. The Bank was ordered, pursuant to that judgment, to deliver to the Authority a certificate of deposit in amount of $100,000. Manway and Damar appealed to our Court from the judgment against them. We affirmed by an order entered April 13, 1982. 697 F.2d 293.

Once the judgment had been affirmed, the Authority demanded payment of the certificate of deposit and all interest that had accrued thereon—a total of $190,256.06. Since the judgment by its terms made no reference to accrued interest, the Bank contacted the construction companies. Manway and Damar disputed the Authority's claim to the interest. They took the position that, since they originally had purchased the certificate, the interest belonged to them. Since the proper disposition of the accrued interest was unclear, the Bank informed the Authority that it would turn over the undisputed amount owed—the $100,000—pending clarification of its obligation regarding the accrued interest. The Authority refused to accept the proffered $100,000. Subsequently it filed a motion to cite the Bank for contempt on the ground that failure to turn over the accrued interest constituted disobedience of the court's judgment.

At the contempt hearing on July 13, 1982, the Bank attempted to file a motion for clarification of the court's August 17, 1981 judgment insofar as it concerned accrued interest. The court declined to entertain the motion. The Authority thereupon presented a previously unconsidered claim against the Bank—for damages equal to the interest that would have been earned had the principal been properly reinvested from April 1971 to January 1976. Counsel for

the Authority informed the court, however, that this latter claim for failure to reinvest would be pursued in a separate state court action. The hearing was continued until July 20 so that the Bank might obtain releases from various possible claimants to the accrued interest.

At the resumed hearing on July 20, the Authority, contrary to its representations at the July 13 hearing, pressed its claim for damages due to the failure to reinvest from 1971 to 1976, together with its claim for the interest actually accrued. The Bank moved to dismiss the Authority's claims for lack of federal jurisdiction, asserting that they constituted a separate action unrelated to the original dispute and for which there was no separate jurisdictional basis. The court denied this motion.

The parties at the July 20 hearing then addressed the merits, after which the court held the Bank in contempt as stated above and ordered that it pay interest at an annual rate of 16%.

The written order subsequently entered on August 9 provided that the Bank, in order to purge itself of contempt, was required to pay interest on the sum of $102,925.00—the sum that had not been reinvested—for the period from April 1, 1971 to January 7, 1976 at an annual rate of 16%, plus interest on the aggregate sum of $190,256.06 for the period from July 1 to July 20, 1982 at the same rate. The Bank was required to comply by August 17; otherwise a fine was to be levied.

On August 19, the court granted a stay of its order pending determination of the Bank's appeal which is now before us.

II.

■ It is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and, if it does not, dismissal is mandatory. Fed.R.Civ.P. 12(h); *e.g., John Birch Society v. National Broadcasting Co.,* 377 F.2d 194, 199 (2 Cir.1967).

In the instant case, federal jurisdiction to adjudicate the dispute between the contractors, Manway and Damar, and the Authority rested on grounds of diversity of citizenship. 28 U.S.C. § 1332(a) (1976). As indicated above, however, the Authority's claims against the Bank presented a congeries of issues completely unrelated to the breach of contract issues that were the subject matter of the original action and which were before the court on grounds of diversity. The original action, simply stated, involved the question of whether the parties had performed in accordance with their contract. The court held, in the main, that the Authority had performed but Manway and Damar had not. Plaintiffs' claim therefore was dismissed, and judgment was entered for the Authority on its counterclaim. We affirmed.

The questions of whether the Bank owed its customer, the Authority, the interest accrued on the original $100,000 certificate of deposit, and whether it was liable to the Authority for the failure to "roll over" the certificate from 1971 to 1976, were completely distinct from the questions decided by the court in the underlying action. Moreover, the Bank's presence in the underlying action was peripheral at most.[2] As the garnishee of Manway and Damar, it was involved only to the extent of the property garnished. This is evident from the judgment in the underlying action which we affirmed. There the district court considered the rights and obligations of the Bank only to the extent that the court directed the Bank as garnishee to deliver to the Authority the undisputed $100,000 principal amount of the original certificate which the Bank held in the Authority's name.

Despite the foregoing, in the contempt proceeding the court adjudicated the Bank's substantial rights and obligations, assertedly to enforce the original judgment. The claims against the Bank in the contempt proceeding raised new and unrelated issues. We hold that the court was without subject matter jurisdiction to consider them.

Where a party asserts what really are two sets of distinct claims, there must be grounds for federal jurisdiction with respect to each. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966) (for pendent jurisdiction, state and federal claims must arise from a common nucleus of operative facts); *Hurn v. Oursler,* 289 U.S. 238, 245–46 (1933). Here there was no such basis for federal jurisdiction over the Authority's claims against the Bank. First, the claims sound in in state law; second, the Authority and the Bank are non-diverse parties; and, third, the claims for interest—both accrued interest and interest allegedly lost as a result of the failure to "roll over" the certificate—are so far removed from the original breach of contract action that the court could not properly have invoked ancillary jurisdiction.

In order for the district court to have considered the Authority's claims on the basis of ancillary jurisdiction, there must have been at least a common nexus of fact—a transactional relationship—between the claims predicated on federal jurisdiction and the claims to be piggy-backed into the federal court. *E.g., Stamford Board of Education v. Stamford Education Ass'n,* 697 F.2d 70, 72 (2 Cir.1982); *Crouse-Hinds Co. v. Internorth, Inc.,* 634 F.2d 690, 700 (2 Cir.1980); *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798, 810–12 (2 Cir.1979) (state law claims for injurious involvement and fraud do not arise out of same transaction as federal claim for securities fraud for purposes of ancillary jurisdiction, in part because "the factual basis of Goldberg's claims for damages concerns pri-

---

**2.** Examples of the limited role of a garnishee are legion in other aspects of federal practice: the citizenship of a "mere garnishee" is immaterial to the maintenance of a diversity action in a federal court, *Bacon v. Rives,* 106 U.S. 99, 104 (1892); joinder of a garnishee in a petition for removal to a federal court is not required under 28 U.S.C. § 1441 (1976), although all other defendants must be so joined, 1A Moore's Federal Practice ¶ 0.167[12.–2] (1982); a garnishee cannot petition for removal, although all other named defendants have that right. *Id.*

marily events subsequent and unrelated to the alleged omissions in the registration statement and prospectus...." *Id.* at 812); *R.M. Smythe & Co. v. Chase National Bank of City of New York,* 291 F.2d 721, 724 (2 Cir.1961).

Even at the farthest reaches of ancillary jurisdiction, we have not allowed district courts to consider claims so distinct as here from the underlying basis for federal jurisdiction. For example, in *Grimes v. Chrysler Motors Corp.,* 565 F.2d 841 (2 Cir.1977), the district court had taken over supervision of the distribution of settlement money. Upon a challenge to the court's jurisdiction to do so, we affirmed, but on the ground that such supervision was ancillary to the court's approval of the settlement itself. *Id.* at 844. No such close relationship was present in the instant case. The Bank's conduct in not "rolling over" the certificate of deposit from 1971 to 1976 and in not paying out the accumulated interest raises questions unrelated to the court's judgment that the Authority did not breach its contract with Manway and Damar. The district court plainly is foreclosed from considering such unrelated state claims unless there is an independent basis for federal jurisdiction.

In fairness to the district court, Fed.R. Civ.P. 70 at first blush may be thought to provide a jurisdictional basis for the contempt proceedings against the Bank because the court was merely taking steps to enforce its original judgment.[3] It is axiomatic, however, that "these rules shall not be construed to extend ... the jurisdiction of the United States district courts...." Fed.R.Civ.P. 82; *e.g., Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 370 (1978). Even though Rule 70 provides for the enforcement of the specific terms of a judg-

ment,[4] the Federal Rules as such simply do not create a basis for federal jurisdiction over the Authority's independent, unrelated claims against the Bank. *Georgia Central Credit Union v. Martin G.M.C. Trucks,* 622 F.2d 137, 139 (5 Cir.1980) (court of appeals affirmed district court's dismissal for lack of subject matter jurisdiction, including district court's holding that Rule 70 does not confer jurisdiction).

We hold that the district court lacked subject matter jurisdiction over the Authority's claims against the Bank and the contempt order must be vacated.

Vacated.

---

3. Indeed the district court, in its conclusions of law, stated that Rule 70 provided the basis for its jurisdiction over the Authority's claims against the Bank.

4. Fed.R.Civ.P. 70, in relevant part, provides: "If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party .... The court may also in proper cases adjudge the party in contempt...."