**NATIONAL WESTMINSTER BANK U.S.A., Petitioner,**

v.

**Calvin W.S. CHENG, et al., Respondents.**

**No. 86 Civ. 6077 (DNE).**

United States District Court, S.D. New York.

Dec. 10, 1990.

Cole & Deitz, New York City (Michael Milner, of counsel), for petitioner.

Jacobs Presinger & Parker, New York City (I. Michael Bayda, Matthew C. Lau, of counsel), for respondents.

**OPINION AND ORDER**

EDELSTEIN, District Judge:

Respondents move for judgment on the pleadings pursuant to Federal Rules of Civ-

---

il Procedure 9(b), 12(c), 12(h)(3), and for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, respondents' motion to dismiss the instant action for lack of subject matter jurisdiction is granted.

## I. BACKGROUND

Petitioner, National Westminster Bank USA ("NatWest USA" or the "Bank"), has brought the instant action against respondents Calvin W.S. Cheng, et al., to recover judgments entered against Soto Grande Shipping Corporation, S.A. ("Soto Grande"), and Y.C. Cheng, Calvin Cheng's father, for approximately $1,967,858.36. The default judgments were signed by United States District Judge Edward Weinfeld of this Court and entered against Soto Grande on October 28, 1985 and against Y.C. Cheng on May 2, 1986. The instant action was filed against respondents in August of 1986.

In May 1985, Y.C. Cheng approached NatWest USA for a loan to help him purchase a ship named the M.V. Pomona ("Pomona") through a corporation owned by him, Soto Grande. NatWest USA loaned Y.C. Cheng and Soto Grande approximately $3,500,000 to finance the purchase of the Pomona. The loan was secured by a mortgage on the Pomona and was personally guaranteed by Y.C. Cheng.

Y.C. Cheng owned ships through a number of different companies, each of which was formed for the sole purpose of being record owner of a single ship. Each company had borrowed money from lending institutions and the loans in each case were secured by mortgages and assignments of earnings of the respective ships. Petitioner alleges that the shares of many of these corporations were owned in the name of various members of the Cheng family, including respondent Calvin Cheng. Calvin Cheng and those companies held under the name of Calvin Cheng constitute the respondents in the instant action. Petitioner alleges that all the companies were run together as one business by Y.C. Cheng, who maintained direct control over the operations of the business, and that corporate formalities were disregarded and that funds of the various corporations were commingled.

Petitioner further alleges that in 1982, Y.C. Cheng began to experience financial difficulty due to the decline in the shipping industry and that Y.C. Cheng therefore entered into a scheme with his son Calvin Cheng whereby Y.C. Cheng would transfer ownership of the profitable ships in corporations under his name to corporations held under Calvin Cheng's control. In September of 1985, loans on all the ships still owned by Y.C. Cheng were allowed to go into default and the various ships were arrested for nonpayment of crew wages, bunkers and port charges. The Pomona was one of these ships and was arrested and subsequently sold in the People's Republic of China to pay unpaid crew wages in the amount of approximately $750,000. Y.C. Cheng has allegedly disappeared.

The petitioner has obtained default judgments against Y.C. Cheng and Soto Grande in the amount of $1,967,858.36 from this Court and petitioner alleges that these judgments remain unsatisfied. In the instant action, petitioner seeks an order and judgment against respondents under theories of fraudulent conveyance and piercing the corporate veil directing that petitioner is entitled to satisfy its judgments out of respondents' assets.

## II. DISCUSSION

In its petition, NatWest USA asserts federal jurisdiction under 28 U.S.C. § 1332, the equitable doctrine of ancillary subject matter jurisdiction, and Federal Rule of Civil Procedure 69(a). However, in its motion papers, NatWest relies solely on the theory of ancillary jurisdiction. In any event, no basis of subject matter jurisdiction exists for petitioner's claims in the instant action.

For there to be diversity jurisdiction under 28 U.S.C. § 1332, there must be "complete" diversity. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967). In other words, all of the plaintiffs, or petitioners, must be of citizenship diverse

to that of all defendants, or respondents. *John Birch Soc. v. National Broadcasting Co.*, 377 F.2d 194, 197 (2d Cir.1967). In NatWest USA's petition, NatWest USA states that its principal place of business is New York and alleges that respondent corporations have their principal places of business in New York. Pursuant to 28 U.S.C. § 1332(c)(1), a corporation is deemed to be a citizen of its state of incorporation and of the state where it has its principal place of business. Petitioner and all of the respondent corporations have the same citizenship. Therefore, the petitioner is not of diverse citizenship to that of all the respondents. Accordingly, there is no complete diversity and therefore there is no jurisdiction for the instant action under 28 U.S.C. § 1332.

■ NatWest USA, however, relies for jurisdiction in its brief on the doctrine of ancillary jurisdiction. Under the doctrine of ancillary jurisdiction, a federal court is empowered to adjudicate ancillary claims involving state law without an independent basis of subject matter jurisdiction. *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir.1983). In order for a federal court to have ancillary jurisdiction of such a state claim, the state claim and the federal claim must arise from a common nucleus of operative facts. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

■ Ancillary jurisdiction may be exercised to protect a judgment of a court through enforcement. *Eagerton, supra*, 698 F.2d at 1119. It is well settled that "jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until the judgment is satisfied.... Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purpose to which it was conferred by the Constitution." *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867). However, where a party seeks to invoke ancillary jurisdiction to protect a judgment of the court, there must be a transactional relationship "between the

claims predicated on federal jurisdiction and the claims to be piggy-backed into the federal court." *Manway Construction Co., Inc. v. Housing Authority of the City of Hartford, et al.*, 711 F.2d 501, 504 (2d Cir.1983); *See Berry v. McLemore*, 795 F.2d 452, 455 (5th Cir.1986) ("post-judgment jurisdiction ... is limited to those actions that a court may take in the same action").

■ Petitioner in the instant action has gotten default judgments against Y.C. Cheng and Soto Grande. Petitioner has brought the instant action against Calvin Cheng and various corporations held in his name to collect on the judgments entered against Y.C. Cheng and Soto Grande. Petitioner seeks to effectuate its judgment by proceeding under state law theories of fraudulent conveyance and piercing the corporate veil.

This Court cannot exercise ancillary jurisdiction over the instant action. First, petitioner's claims sound in state law. Second, petitioner and respondents are non-diverse parties. Petitioner could not have included respondents in the instant action in the previous action against Y.C. Cheng and Soto Grande because diversity would have been destroyed and there would have been no basis for federal jurisdiction. Therefore, if this Court were to exercise ancillary jurisdiction over the instant action, petitioner would be achieving indirectly through two separate actions that which he could not have achieved directly in one action. Third, petitioner's theories of fraudulent conveyance and piercing the corporate veil are removed from the original breach of contract action against Y.C. Cheng and Soto Grande. Petitioner's claims involve investigation into the facts of how the corporations at issue were run and involve legal issues of New York corporate law not related to Y.C. Cheng and Soto Grande's failure to make loan payments to NatWest USA. Thus, there is no close nexus as in *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir.1977), where the Court of Appeals found that a district court had ancillary jurisdiction to

supervise the distribution of a settlement which the district court had approved.

The cases cited by petitioner to support this Court's exercise of ancillary jurisdiction are inapposite to the instant action. First, petitioners cite a line of cases which hold that a district court may exercise ancillary jurisdiction for the limited purpose of hearing fee disputes and lien claims between litigants and their attorneys. *See Petition of Rosenman Colin Freund Lewis & Cohen*, 600 F.Supp. 527, 531 (S.D.N.Y. 1984); *Marrero v. Christiano*, 575 F.Supp. 837, 839 (S.D.N.Y.1983); *Application of Kamerman*, 278 F.2d 411, 413 (2d Cir. 1960). Second, petitioner relies on *Blackburn Truck Lines, Inc. v. Francis*, 723 F.2d 730 (9th Cir.1984), in which the Ninth Circuit held that the district court had jurisdiction over a separate action to enforce a previous judgment because the second suit was in one sense an attempt to enforce the previous judgment and because in another sense it was "an effort to accomplish what joinder could have provided." *Id.* at 732. Finally, petitioner relies on the proposition that a court should exercise ancillary jurisdiction "when the core of facts supporting the original claim activates legal rights in favor of a party defendant that would otherwise remain dormant." *Eagerton*, 698 F.2d at 1119.

Petitioner in the instant action is not an attorney seeking fees. Further, petitioner could not have joined respondents in this action in the initial action because doing so would have destroyed diversity jurisdiction. Finally, petitioner is not a party defendant, and although petitioner claims that if this Court does not have jurisdiction over the present claims it will not be able to collect on its default judgments, petitioner has resort to the New York state courts.

■ In its petition, petitioner asserts that this Court has jurisdiction under Federal Rule of Civil Procedure Rule 69(a). A Federal Rule of Civil Procedure, however, cannot expand the basis for subject matter jurisdiction of the district courts. Fed.R. Civ.P. 82; *Manway, supra*, 711 F.2d at 505. Accordingly, there is no subject matter jurisdiction over the instant action and therefore the instant action must be dismissed.

### III. CONCLUSION

Respondents' motion to dismiss for lack of subject matter jurisdiction is granted.

SO ORDERED.