HBE LEASING CORPORATION, Reyna Leasing Corporation, Reyna Financial Corporation, and John Hancock Leasing Corporation, Plaintiffs,

v.

Hiram H. FRANK, Hiram J. Frank, Henry J. Sandlas, III, Henry J. Sandlas IV, Bruce Huggins, Kelby Kuney, Gary Bowers, H.H.F. Farms, Inc., H.H.F. Frank Enterprises, Inc., Springbrook Grain Company, Inc., Golden Egg Farms, Inc., Robert Ames and H.H. Frank Enterprises, Inc., Pension Plan, Defendants.

No. 88 Civ. 1724 (GLG).

United States District Court, S.D. New York.

March 22, 1995.

S. Pitkin Marshall, HBE Leasing Corp., New York City, J. Scott Greer, Lewis & Greer, Poughkeepsie, NY, for Signal Capital Corp., Reyna Leasing Corp., John Hancock Leasing Corp. and Reyna Financial Corp.

James N. Oppenheim, Stephen L. Oppenheim, Oppenheim & Meltzer, Monticello, NY, Gerald B. Lefcourt, Gerald B. Lefcourt, P.C., New York City, for Henry J. Sandlas, III.

Judd Burstein, Judd Burstein, P.C., New York City, Richard A. Stoloff, Goldstein & Stoloff, Monticello, NY, for Bruce Huggins, H.H.F. Farms, Inc., H.H. Frank Enterprises, Inc., Pension Plan HH Frank Enterprises.

Cliff Gordon, Monticello, NY, for Robert Ames.

Richard Ware Levitt, New York City, for Springbrook Grain Co., Inc. and Kelby Kuney.

Michael G. Berger, New York City, for Gary Bowers.

Gerald B. Lefcourt, Gerald B. Lefcourt, P.C., New York City, for Henry J. Sandlas, IV.

Jay Goldberg, New York City, for Golden Egg Farms, Inc. and Hiram H. Frank.

Richard A. Stoloff, Goldstein & Stoloff, Monticello, NY, Sheryl E. Reich, Gerald B. Lefcourt, P.C., New York City, for Hiram J. Frank.

## OPINION

GOETTEL, District Judge.

In November of 1992 a judgment in the above case was entered against certain of the defendants on causes of action alleging violations of the Racketeer Influenced and Corrupt. Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and fraud. The judgment, including interest, amounted to some $20,000,-000, very little of which has been collected by the judgment creditors. (The judgment was appealed and affirmed by the Second Circuit.) In the Spring of 1994 the judgment creditors, in proceedings supplementary to judgment, issued subpoenas to the First National Bank of Jeffersonville, N.Y. with respect to bank records of family members of the judgment debtors and related organizations. The subpoenaed persons were not judgment debtors.[1] The Bank initially complied with the subpoenas in the belief that its depositors had been advised of the service of the subpoenas and were not objecting. When the subpoenaed parties learned that the Bank was producing their confidential records, they directed the Bank to cease and filed the instant motions to quash or modify the subpoenas.[2]

After initially reviewing the motion papers, this Court issued an order in December of 1994 inquiring whether it had ancillary jurisdiction over the matter in light of the recent case of *Kokkonen v. Guardian Life Insurance Company of America,* —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). (The *Kokkonen* court defined the doctrine of ancillary jurisdiction as "federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at ——, 114 S.Ct. at 1676.) It is well settled, and the parties do not dispute, that because the federal courts are of limited jurisdiction the Court may, *sua sponte,* at any stage of the proceedings, raise the question of subject matter jurisdiction and dismiss if jurisdiction is found to be lacking. Fed.R.Civ.P. 12(h)(3); *John Birch Soc'y v. National Broadcasting Co.,* 377 F.2d 194, 199 (2d Cir.1967).

In *Kokkonen* the parties had stipulated to a settlement following trial but before verdict. The case had been dismissed with prejudice. When a dispute concerning the settlement agreement arose the defendant moved to have the agreement enforced and the plaintiff opposed it on grounds that the Court

---

1. With a single exception, H.H. Frank Enterprises, Inc. Pension Plan, they had not been defendants in the original action. As to the Pension Plan, although it was a defendant, the action against it was dismissed.

2. The motion to quash was based essentially on the claim that there had been no heightened showing of necessity and relevance, which they maintain was necessary before non-party records could be inspected pursuant to the Federal Rules. Many of the records sought predated the institution of litigation by some years.

lacked subject matter jurisdiction. The Supreme Court in a unanimous decision held that federal jurisdiction did not exist. In dealing with the difficult question of ancillary jurisdiction the Court held that it existed in only two types of situations:

> 1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and, 2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority and effectuate its decrees.

*Id.* at ——, 114 S.Ct. at 1676 (citations omitted).

Since the operative facts relating to the settlement agreement were distinct from the underlying state law tort claims, and ancillary jurisdiction was not necessary in order for the Court to function successfully, the Court held that ancillary jurisdiction did not exist.

Rule 69(a) on which the judgment creditors rely does not create jurisdiction. It is simply a mechanism for proceeding in supplementary proceedings. It may be true, as the judgment creditors argue, that the *Kokkonen* decision does not upset the ability of judgment creditors to proceed against judgment debtors in various fashions. But it does affect their ability to pursue non-judgment potential debtors, particularly where the basis for the possible claim involves transactions far different from those giving rise to liability in the original law suit and no debt to the judgment debtor is acknowledged.

*Kokkonen* points out that the doctrine of ancillary jurisdiction is murky (in the words of Justice Scalia, it "can hardly be criticized for being overly rigid or precise") and emphasizes that the particular holdings of prior cases, rather than vague dicta, should be followed. *Id.* at ——, 114 S.Ct. at 1676.[3]

Accordingly, we look for guidance to cases in which judgment creditors have attempted to invoke the doctrine of ancillary jurisdiction to enforce judgments in federal court against entities that were not parties to the original action.

In *Manway Construction Co. v. Housing Authority of the City of Hartford,* 711 F.2d 501 (2d Cir.1983), the plaintiff construction companies had purchased a certificate of deposit with a non-party bank, as security for the satisfactory performance of the plaintiffs' work for the defendants. The district court found that the plaintiffs had breached the contract, entered judgment for the defendants, and ordered the bank to deliver the certificate of deposit to the defendants. However, plaintiffs and defendants disagreed as to who had a right to the interest on the certificate, and defendants also argued that the bank owed them damages for having failed to reinvest the funds from the certificate for several years. *Id.* at 502–03. The defendant moved to have the bank held in contempt and that application was granted.

The Second Circuit held that these two post-judgment issues were distinct from the underlying contract issue, in that they involved different facts and legal issues. Therefore, jurisdiction over the post-judgment claims could not derive from the district court's jurisdiction over the underlying contract dispute—there had to be an independent ground for federal subject matter jurisdiction over the post-judgment claims. Since the post-judgment claims sounded in state law, and involved non-diverse parties, the *Manway* court ruled that the district court lacked subject matter jurisdiction over the post-judgment claims. *Id.* at 503–04; *see also Sandlin v. Corporate Interiors Inc.,* 972 F.2d 1212, 1217 (10th Cir.1992) ("[W]hen postjudgment proceedings seek to hold nonparties liable for a judgment on a theory that requires proof on facts and theories significantly different from those underlying the judgment, an independent basis for federal jurisdiction must exist.")[4]

---

3. The concepts of ancillary and pendent jurisdiction have been a matter of such confusion that Congress attempted to clarify them by establishing the concept of "Supplementary Jurisdiction", 28 U.S.C. § 1367. However the statute applies only to actions commenced after December 1, 1990. Consequently it has no applicability to the judgment in this case which was commenced in 1988. We need not consider whether the new statute would apply in a newly commenced action claiming supplementary jurisdiction.

The *Manway* holding was followed by the court in *National Westminster Bank U.S.A. v. Cheng,* 751 F.Supp. 1158 (S.D.N.Y.1990), which held that it lacked ancillary jurisdiction over plaintiff's attempts to enforce a default judgment against parties who were not involved in the original federal action but who were allegedly under the control of the defaulted defendants. The court noted that there was no independent basis for federal subject matter jurisdiction, since plaintiff's claims were under state law, and the parties were non-diverse. The court held that ancillary jurisdiction was lacking because plaintiff's claims of fraudulent conveyance and piercing the corporate veil involved facts and legal theories that had no close nexus with the cause of action that had produced the default judgment. *Id.* at 1160–61.

The issue before us is similar to the situations in *Manway,* and, especially, *National Westminster Bank.* The judgment creditors' subpoenas are an attempt to determine facts which might lead to a garnishment proceeding against some of the parties whose records are being subpoenaed. If the subpoenas were upheld and produced evidence of funds of the judgment debtors improperly in the possession of the non-parties, it could lead to an independent fraudulent conveyance claim, the result of which would depend upon the judgment creditors' ability to demonstrate the improper purpose of the transfers, the factual circumstances and dates under which they occurred, whether value was given and received, and possibly the knowledge and intent of the transferor and the transferee. Those facts and issues are obviously completely distinct from the RICO and fraud causes of action successfully brought against the judgment debtors.

It is abundantly clear that the subpoena power of the Court is not more extensive than its jurisdiction. *United States Catholic Conference v. Abortion Rights Mobilization,*

*Inc.,* 487 U.S. 72, 76, 108 S.Ct. 2268, 2270–71, 101 L.Ed.2d 69 (1988). Since it is apparent that there is no close nexus of fact between the claims litigated against the judgment debtors and claims that might in the future be made against the subpoenaed parties, we lack the power to enforce the subpoenas under the doctrine of ancillary jurisdiction.[5]

Enforcement of the subpoenas is not essential to effectuate any of the Court's processes or decrees. The judgment creditors are free to enforce their judgment in a state court or in another separate federal action. There is in fact another action pending before another Judge in this District in which some of these relatives of the judgment debtors are named as defendants. We express no opinion as to whether these subpoenas could be served as discovery devices in that action.

While the judgment creditors have not offered the argument, we note that the fact that there may be diversity of citizenship between them and the subpoenaed parties would not justify invoking federal jurisdiction as to the subpoenas. Diversity jurisdiction would have to be asserted in a plenary action in which the Court would have to determine whether both the citizenship and the amount in controversy requirements were met, particularly the amount in controversy.[6] The plaintiffs would first have to establish that the funds improperly transferred to a particular defendant exceeded $50,000, or that there was some other basis for their liability for additional sums transferred to others.

We conclude, therefore, that we must quash the existing subpoenas without prejudice to further proceedings in state court or in a different federal action.

**SO ORDERED.**

---

**4.** Garnishment is an action separate and independent from the action giving rise to the debt. *Berry v. McLemore,* 795 F.2d 452, 455 (5th Cir. 1986).

**5.** We do note that the original motion was brought on by the non-party putative garnishees, but we do not see the procedural posture as increasing the Court's jurisdiction. Indeed the

judgment creditor's attorney acknowledged that the jurisdictional issue should not turn on who brings the motion to test the subpoenas.

**6.** In *Kokkonen* diversity of citizenship existed, but as to the settlement agreement dispute it appears unlikely that there was an amount in controversy of $50,000 or more.